ORIGINAL

TED ADKINSON (State Bar No. 167350)
ROBERTS & KEHAGIARAS LLP
One World Trade Center, Suite 2350
Long Beach, CA 90831
Telephone:     (310) 642-9800
Facsimile:     (310) 868-2923
Email:         tha@tradeandcargo.com

GEORGE M. CHALOS (*pro hac vice application pending*)
CHALOS & CO, P.C.
123 South Street, Suite 105
Oyster Bay, New York 11771
Telephone:     (516) 714-4300
Facsimile:     (516) 750-9051
Email:         gmc@chaloslaw.com

Attorneys Specially Appearing for Defendant
RIZZO BOTTIGLIERI-DE CARLINI ARMATORI S.P.A.

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION



| | |
|---|---|
| PIONEER FREIGHT FUTURES COMPANY LIMITED (IN LIQUIDATION)<br><br>Plaintiff,<br><br>vs.<br><br>MARINE TRADE, S.A. and RIZZO BOTTIGLIERI-DE CARLINI ARMATORI, S.P.A.,<br><br>Defendants. | Case No.: CV-11-10313-PA (VBKx)<br><br>IN ADMIRALTY<br><br>**DECLARATION OF GIUSEPPE MAURO RIZZO IN SUPPORT OF DEFENDANT RIZZO BOTTIGLIERI-DE CARLINI ARMATORI, S.P.A.'S MOTION TO VACATE ATTACHMENT**<br><br>FILED UNDER SEAL PURSUANT TO LOCAL RULE 79.5-1 |

## DECLARATION OF GIUSEPPE MAURO RIZZO

I, Giuseppe Mauro Rizzo, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

1.     I am an individual of sound mind and body, and have never been convicted of a crime of moral turpitude.

ROBERTS & KEHAGIARAS LLP
ATTORNEYS AND COUNSELORS AT LAW
One World Trade Center, Suite 2350
Long Beach, CA 90831
(310) 642-9800

2. This declaration is respectfully submitted in support of Defendant RIZZO-BOTTIGLIERI-DE CARLINI ARMATORI, S.P.A.'s (hereinafter "RBDA") motion to vacate a pending Rule B attachment of the M/T ADELE MARINA RIZZO and to dismiss the U.S. legal proceedings against RBDA.

3. I am a citizen of Italy and a resident of Torre del Greco (Italy). I am the Chief Executive Officer and Managing Director of RBDA. A copy of my current curriculum vitae is attached hereto as Exhibit "A".

4. I make this declaration based upon my personal knowledge, official company records, my own investigation, and discussions with RBDA's legal advisors.

5. RBDA is a family owned and operated company that was founded and incorporated on 20 July, 1993, with a registered office of Viale Olivella, 10, Torre del Greco (Naples), Italy. A copy of RBDA's Articles of Association, along with its English translation, is attached hereto as Exhibit "B". In addition, a copy of RBDA's Certificate of Registry, along with its English translation, is attached hereto as Exhibit "C".

6. As noted in RBDA's Articles of Association, RBDA was incorporated for the purpose of "operating by means of proprietary vessels or vessels of third parties and engagement of the crew as well as the purchase, sale, rent, exchange and the operation of vessels and any kind of crafts." *See* Exhibit B.

7. I am aware that Plaintiff has attached the M/T ADELE MARINA RIZZO, pursuant to an Order and Writ of Attachment issued in the above captioned matter in order to, *inter alia*, obtain security for claims that it has against a company called Marine Trade S.A. (hereinafter "Marine Trade").

-2-

DECLARATION OF GIUSEPPE MAURO RIZZO IN SUPPORT OF DEFENDANT RIZZO BOTTIGLIERI-DE CARLINI ARMATORI, S.P.A.'S MOTION TO VACATE ATTACHMENT
Case No.: 11-CV-1013-PA (VBKx)

8. The M/T ADELE MARINA RIZZO has never been owned, operated, or managed by Marine Trade.

9. RBDA is the registered Owner of the M/T ADELE MARINA RIZZO. RBDA has also served as the vessel's technical and commercial manager since the vessel was built in 2010.

10.    This wrongful attachment is causing RBDA to suffer substantial damages, including disruption of business operations and loss of reputation in the commercial marketplace.

11.    Plaintiff has not and cannot assert any factual grounds upon which to base any claim against RBDA that would warrant the attachment of the M/T ADELE MARINA RIZZO in this action, or anywhere else in the world.

12.    I am aware that Plaintiff has sought (and obtained) the attachment of the M/T ADELE MARINA RIZZO based on its allegation that Marine Trade is entirely dominated and controlled by RBDA and that the two companies are "alter egos" of one another. Plaintiff's allegations are wholly untrue.

13.    Plaintiff has not asserted any supportable factual grounds upon which to allege such a relationship.

14.    Plaintiff has not and cannot rebut that any corporate relationships that RBDA has are at arms-length. Moreover, Plaintiff has not and cannot provide any evidence that RBDA exercise dominion or control over Marine Trade.

15.    RBDA and Marine Trade are separate and distinct legal entities, independently financed and operated.

16.    In 2005, I was invited, in my personal capacity, to serve as a Consulting Director of Marine Trade, a newly established Luxembourg company operating in the Forward Freight Agreement (hereinafter "FFA") market.

---

-3-
DECLARATION OF GIUSEPPE MAURO RIZZO IN SUPPORT OF DEFENDANT RIZZO BOTTIGLIERI-DE CARLINI ARMATORI, S.P.A.'S MOTION TO VACATE ATTACHMENT
Case No.: 11-CV-1013-PA (VBKx)

ROBERTS & KEHAGIARAS LLP
ATTORNEYS AND COUNSELORS AT LAW
One World Trade Center, Suite 2350
Long Beach, CA 90831
(310) 642-9800

17.     I personally negotiated a number of FFAs on Marine Trade's behalf, including the FFAs between Marine Trade and Plaintiff.  Thereafter, a copy of the recap was sent directly to Marine Trade to be handled by other staff members of Marine Trade.

18.     At no time did I ever participate in any negotiations using RBDA e-mail or any other RBDA equipment.

19.     At no point was I ever a shareholder of Marine Trade.

20.     On or about October 8, 2008, I resigned and ceased my activity with Marine Trade due to increasing personal commitments.  A copy of the abstract concerning my resignation is attached hereto as Exhibit "D."

21.     My involvement as Consulting Director of Marine Trade was solely on a personal level.  RBDA had no involvement with the business of Marine Trade while I acted as Marine Trade's Consulting Director, nor does it have any involvement with Marine Trade today.

22.     None of the RBDA employees have ever been employees of Marine Trade.

23.     Simply put, apart from my personal involvement with Marine Trade for the limited time set forth above (i.e. – 2005 until 2008), there is no "overlap" between the companies.

24.     RBDA does not have common or overlapping stock ownership with Marine Trade.

25.     RBDA and Marine Trade are not partners or joint venturers.

26.     RBDA is its own independent profit/loss center and maintains its own books and records.  Copies of RBDA's Financial Statements for 2007, 2008, 2009, and 2010 are attached hereto as Exhibits "E", "F", "G", and "H", respectively. There are, of course, no references in any of RBDA's Financial Statements to the operations or finances of Marine Trade.

27.    Copies of RBDA's tax returns for 2008, 2009, 2010 and 2011 are attached hereto as Exhibits "I", "J", "K" and "L", respectively.  Again, there are no references in any of RBDA's tax returns to Marine Trade.[1]

28.    RBDA does not hold or use the property or assets of Marine Trade as its own, nor does Marine Trade hold any of the assets of RBDA.

29.    RBDA observes formal legal requirements regarding all corporate activities.  For the Court's ready reference, copies of the minutes of RBDA's Board of Director meeting(s) held from 2005 until 2011 are attached hereto as Exhibit "M".  Again, there are no references to Marine Trade in these minutes, as at no time during these meetings was the business of Marine Trade ever discussed.[2]

30.    Plaintiff has not and cannot allege any existence of fraud, wrongdoing or injustice to third parties by RBDA.

31.    I am aware that Plaintiff has alleged that RBDA offered a performance guarantee on behalf of Marine Trade.  At no time did RBDA issued such guarantee .

32.    In short, RBDA is a completely separate and distinct legal entity from Marine Trade and vice versa.

I hereby declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge.

---

[1] Because RBDA is an Italian company, many of its corporate documents, including its tax returns the minutes of the Board of Directors meetings are in the Italian language.  Due to the emergency nature of this motion, the translations of these extensive documents could not be obtained within the time constraints presented by the circumstances of this case.  However, RBDA is working with its legal advisors to obtain English translations of all relevant documents and will provide copies of same to the Court as soon as practicable.

[2] Because of the confidential nature of the minutes of RBDA's Board of Directors, RBDA does not intend to publicly file these documents in support of this application.  Our legal advisors will, of course, provide a copy to the Court for *in camera* review and will provide such documents to opposing counsel once an appropriate confidentiality agreement has been reached.

DECLARATION OF GIUSEPPE MAURO RIZZO IN SUPPORT OF DEFENDANT RIZZO BOTTIGLIERI-DE CARLINI ARMATORI, S.P.A.'S MOTION TO VACATE ATTACHMENT
Case No.: 11-CV-1013-PA (VBKx)

ROBERTS & KEHAGIARAS LLP
ATTORNEYS AND COUNSELORS AT LAW
One World Trade Center, Suite 2350
Long Beach, CA 90831
(310) 842-8800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBERTS & KEHAGIARAS LLP
ATTORNEYS AND COUNSELORS AT LAW
One World Trade Center, Suite 2350
Long Beach, CA 90831
(310) 642-9800

Dated: December 16, 2011
         Torre del Greco, Italy



GIUSEPPE MAURO RIZZO

-6-

DECLARATION OF GIUSEPPE MAURO RIZZO IN SUPPORT OF DEFENDANT RIZZO BOTTIGLIERI-DE
CARLINI ARMATORI, S.P.A.'S MOTION TO VACATE ATTACHMENT
Case No.: 11-CV-1013-PA (VBKx)

# RIZZO DECLARATION
# EXHIBIT "A"

## *RESUME OF GIUSEPPE MAURO RIZZO*

**Giuseppe Mauro Rizzo is the Managing Director and CEO of his family controlled/owned company : the Italian Shipowners/Operators Company Rizzo-Bottiglieri-De Carlini Armatori S.p.A. (formerly known as Bottiglieri di Navigazione S.p.A. based in Torre del Greco - ITALY)**

He was born in Naples on 15 August , 1971

He is Son of Grazia Bottiglieri (President and CEO of Rizzo-Bottiglieri-De Carlini Armatori S.p.A.) and of Roberto Rizzo ( Board Director of Rizzo-Bottiglieri-De Carlini Armatori S.p.A)

Education Degrees + Previous Work/Training Experiences :
- Major Degree in Mechanical Engineering
- PhD Degree in Business Statistics and Economics
- Traffic/Operations Assistant Manager in Mediterranean Shipping Company (USA)
- Broker Trainee in Mid-Ship Marine (USA)

Titles :
- Managing Director and CEO of Rizzo-Bottiglieri-De Carlini Armatori S.p.A
- Commercial Executive Director of Rizzo-Bottiglieri-De Carlini Armatori S.p.A
- Managing Director and CEO of Hotel La Palma S.p.A. – Capri (owned from family)
- Board Director of Rizzo-Bottiglieri-De Carlini Armatori S.p.A
- President of  Young Group of Italian Shipowners Association-Confitarma from 2005 to 2010
- Board Director and Executive Committee member of Italian Shipowners Association-Confitarma since 2005
- Board Member of BIMCO since 2010

Giuseppe Mauro Rizzo works in his family company since 1997. Since then he has been developing the trading and chartering business of the group. Today Rizzo-Bottiglieri-De Carlini Armatori S.p.A. is one of the most active Dry-Bulk Panamax Owners/Operators in the Market.

RIZZO-BOTTIGLIERI-DE CARLINI ARMATORI S.p.A. is a shipowning company founding its roots in a family tradition since 1850. Giuseppe Mauro Rizzo is a member of the 6th generation working in this business.

# RIZZO DECLARATION
# EXHIBIT "B"

Dott. Nicola Capuano
Dott. Roberto Altieri
NOTAI
Via Depretis, 5 · Tel. 081  5515241
80133  Napoli

S T A T U T O

## Articolo 1

### Denominazione

E'   costituita   una   Società   per   azioni   denominata

"RIZZO-BOTTIGLIERI-DE  CARLINI  ARMATORI  Società  per  Azioni"

detta anche brevemente "RBD  ARMATORI S.p.A."

## Articolo 2

### Sede

La società ha sede in Torre del Greco (NA).

## Articolo 3

### Oggetto

La società ha per oggetto:

-lo svolgimento dell'attività armatoriale in campo marittimo mediante

l'utilizzo di naviglio proprio e/o in conto terzi, l'armamento e la gestione

di navi proprie e/o di terzi, l'arruolamento degli equipaggi nonchè

l'acquisto, la vendita, la locazione non finanziaria, la permuta, la gestione

di navi e natanti di qualsiasi genere con facoltà di:

-esercitare servizi marittimi di qualsiasi specie, anche di linea, anche per

conto dello Stato e con la sua partecipazione, in particolare trasporti

nazionali ed internazionali;

-gestire per conto proprio e di terzi punti di distribuzione, l'acquisto e la

vendita di carburanti;

-costruire navi e demolire relitti;

-svolgere attività di importazione ed esportazione;

-commerciare materiale navale nazionale ed estero;

1

-esercitare attività volta al trasporto terrestre complementare a quello marittimo.

La società si propone di svolgere anche le seguenti attività:

-l'acquisto, la vendita e la permuta, anche frazionata, di fabbricati per civili abitazioni, per esercizi commerciali e industriali, per uso alberghiero e/o turistico, la compravendita di suoli e fondi rustici e di beni e diritti immobiliari in genere; la gestione degli immobili di proprietà della società o di terzi, ivi compresi l'affitto e la locazione - non finanziaria - degli stessi, anche in regime di proprietà comune turnaria indivisa, ammobiliati e/o non ammobiliati;

l'esercizio in forma diretta e/o indiretta dell'attività alberghiera, di ristorazione, night-clubs, e ogni altra attività turistica connessa, ivi comprese le attività di tours-operator e di organizzazione di convegni, seminari e manifestazione a fondo culturale, artistico, ricreativo e turistico.

La società, che è costituita con la finalità di realizzare nuove iniziative produttive, potrà avvalersi di tutte le agevolazioni ed incentivi previsti a favore delle imprese, ivi compresi quelli a favore dell'imprenditoria giovanile.

La Società può infine compiere tutti gli atti occorrenti per l'attuazione dell'oggetto sociale, così tra l'altro, quale attività non prevalente e da esercitarsi non nei confronti del pubblico:

-compiere operazioni commerciali, industriali, immobiliari, bancarie, finanziarie e ipotecarie;

-ricorrere a qualsiasi forma di finanziamento con Istituti di credito, Banche, Società e privati, concedendo le opportune garanzie reali e

2

personali;

-concedere fideiussioni, avalli e garanzie reali a favore di terzi;

-assumere partecipazioni ed interessenze in società anche estere ed enti aventi oggetto analogo od affine al proprio;

-partecipare a consorzi e raggruppamenti di imprese.

Articolo 4

Durata

La durata della società è stabilita sino al 31 dicembre 2050. Può essere prorogata per una o più volte per deliberazione dell'assemblea degli azionisti.

Articolo 5

Domicilio

Il domicilio dei soci, degli amministratori, dei sindaci e del revisore, per i loro rapporti con la società, è quello che risulta dai libri sociali.

Articolo 6

Capitale e azioni

Il capitale sociale è di euro 14.500.000,00 (quattordicimilionicinquecentomila) ed è diviso in numero 1.450.000 azioni del valore nominale di dieci (10) euro ciascuna.

Le azioni sono rappresentate da titoli azionari.

Articolo 7

Strumenti finanziari

La società, con delibera da assumersi da parte dell'assemblea straordinaria con le maggioranze di cui all'articolo 15 del presente statuto, può emettere strumenti finanziari forniti di diritti patrimoniali o

3

di diritti amministrativi, escluso il diritto di voto nell'assemblea generale degli azionisti.

I titolari degli strumenti finanziari hanno diritto di nominare un componente indipendente del collegio sindacale, mediante delibera della loro assemblea speciale di appartenenza, alla quale si applicano le disposizioni dettate dal presente statuto in materia di assemblea dei soci.

Articolo 8

Obbligazioni

La società, con delibera dell'Organo Amministrativo, può emettere prestiti obbligazionari e, con delibera dell'Assemblea straordinaria, può emettere prestiti obbligazionari convertibili.

L'organo amministrativo nel deliberare, con le modalità di cui all'articolo 2436 c.c., l'emissione di un prestito obbligazionario è tenuto a rispettare la normativa prevista dagli articolo 2410 e seguenti c.c.

Articolo 9

Patrimoni destinati

La società può costituire patrimoni destinati ad uno specifico affare ai sensi degli articoli 2447 bis e seguenti c.c.

La deliberazione costitutiva è adottata dall'Assemblea straordinaria ai sensi dell'articolo 15 del presente statuto.

Articolo 10

Finanziamenti

La società potrà acquisire dai soci finanziamenti a titolo oneroso o gratuito, con o senza obbligo di rimborso, nel rispetto delle normative vigenti, con particolare riferimento a quelle che regolano la raccolta di

4

risparmio tra il pubblico.

Articolo 11

Trasferimento delle azioni

Le azioni sono liberamente trasferibili per atto mortis

causa mentre sono trasferibili per atto tra vivi alle condizioni di seguito

indicate.

11.1.1. Per "trasferimento" si intende il trasferimento per

atto tra vivi ed a causa di morte di azioni o di diritti di

opzione.

Ove indicato azioni deve comunque leggersi azioni e diritti di opzione.

11.1.2. Nella dizione "trasferimento per atto tra vivi" s'in

tendono compresi tutti i negozi di alienazione, nella più ampia accezione

del termine e quindi, oltre alla vendita, a puro titolo esemplificativo, i

contratti di permuta, dazione in pagamento e trasferimento del mandato

fiduciario. In tutti i casi in cui la natura del negozio non preveda un

corrispettivo ovvero il corrispettivo sia diverso dal denaro, i soci

acquisteranno le azioni versando all'offerente la somma determinata di

comune accordo, o in mancanza di accordo, dall'arbitratore, come in

seguito meglio specificato.

11.1.3. L'intestazione a società fiduciaria o la reintestazione, da parte della

stessa (previa esibizione del mandato fiduciario) agli effettivi proprietari

non è soggetta a quanto disposto dal presente articolo.

11.1.4. Nella dizione "trasferimento a causa di morte" si intendono

comprese la successione legittima o testamentaria, a titolo universale o

particolare, di persona fisica socia.

11.1.5 Nell'ipotesi di trasferimento di azioni per atto tra vivi eseguito senza l'osservanza di quanto di seguito prescritto, l'acquirente non avrà diritto di essere iscritto nel libro soci, non sarà legittimato all'esercizio del voto e degli altri diritti amministrativi e non potrà alienare le a-zioni con effetto verso la società.

11.2.1 Le azioni sono trasferibili liberamente solo a favore del coniuge di un socio; di parenti in linea retta di un socio, in qualunque grado e in linea collaterale fino al secondo grado, di società controllanti, controllate, collegate o comunque appartenenti al medesimo gruppo di società socia. In qualsiasi altro caso di trasferimento delle azioni ai soci, regolarmente iscritti nel libro soci, spetta il diritto di prelazione per l'acquisto; pertanto il socio che intenda alienare tutte o parte delle proprie azioni, al di fuori dei casi suddetti, dovrà preventivamente offrirle agli altri soci, in proporzione delle azioni da ciascuno possedute, ed al valore corrente. Le azioni che non fossero acquistate da parte di qualche socio, dovranno venire offerte agli altri soci alle medesime condizioni; solamente le azioni rimaste eventualmente invendute, dopo questa seconda offerta, potranno essere trasferite a terzi acquirenti. L'azionista che intenda vendere le sue azioni al di fuori dei casi di trasferimento libero, ha l'obbligo di dare preventiva comunicazione di tale sua intenzione, a mezzo lettera raccomandata con ricevuta di ritorno all'Organo amministrativo della società, con l'indicazione del quantitativo di azioni, del prezzo richiesto, nonché l'indicazione del beneficiario del trasferimento.

L'organo amministrativo cercherà di curarne il collocamento tra i soci, come sopra indicato, ovvero di proporre all'assemblea l'acquisto da parte

della società, a norma dell'articolo 2357 del Codice Civile.

Qualora non si raggiunga l'accordo tra il socio venditore e gli acquirenti sul prezzo delle azioni, le parti provvederanno alla nomina di un unico arbitratore che stabilirà il prezzo di cessione con criteri equi ed obiettivi. In caso di mancato accordo sulla nomina dell'unico arbitrato-re esso sarà nominato dal Presidente del Tribunale del luogo in cui è posta la sede della società, su richiesta della parte più diligente.

Nell'effettuare la sua determinazione l'arbitratore dovrà tener conto della situazione patrimoniale aggiornata della società, della sua redditività, del valore dei beni immateriali e materiali posseduti e della sua posizione sul mercato.

11.2.2 Il costo dell'arbitratore sarà a carico: per metà dei soci che hanno esercitato il diritto di prelazione in proporzione alle rispettive partecipazioni e per metà del socio offerente.

11.2.3 Qualora la prelazione non sia esercitata per la totalità delle azioni offerte, il socio offerente, ove non intenda accettare l'esercizio della prelazione limitato ad una parte delle azioni stesse, sarà libero di trasferire la totalità delle azioni all'acquirente indicato nella comunicazione entro 15 (quindici) giorni dal giorno di ricevimento della comunicazione stessa da parte dei soci, ovvero, ove accetti l'esercizio della prelazione per parte delle azioni, potrà entro lo stesso termine di 15 (quindici) giorni trasferire tale numero di azioni al socio che ha esercitato la prelazione, alle condizioni che saranno concordate con lo stesso.

11.2.4 Il diritto di prelazione spetta ai soci anche quando si intenda trasferire la nuda proprietà delle azioni e l'usufrutto delle stesse; il diritto

di prelazione non spetta per il caso di costituzione di pegno.

Articolo 12

Recesso

Hanno diritto di recedere i soci che non hanno concorso all'approvazione delle deliberazioni riguardanti:

a) la modifica della clausola dell'oggetto sociale, quando consente un cambiamento significativo dell'attività della società;

b) la trasformazione della società;

c) il trasferimento della sede sociale all'estero;

d) la revoca dello stato di liquidazione;

e) la modifica dei criteri di determinazione del valore dell'azione in caso di recesso;

f) le modificazioni dello statuto concernenti i diritti di voto o di partecipazione;

g) la proroga del termine;

h) l'introduzione o la rimozione di vincoli alla circolazione dei titoli azionari.

I termini e le modalità di esercizio per il diritto di recesso, i criteri di determinazione del valore delle azioni per le quali il recesso è esercitato, ed il procedimento di liquidazione sono regolati dagli articoli 2437-bis-ter-quater-quinquies e sexies c.c.

Articolo 13

L'assemblea dei soci

L'assemblea ordinaria delibera sulle materie ad essa riservate dalla legge e deve essere convocata almeno una volta l'anno, entro centoventi (120)

giorni dalla chiusura dell'esercizio sociale. Essa potrà essere convocata entro il termine maggiore di centottanta (180) giorni, nel caso in cui la Società fosse tenuta alla redazione del bilancio consolidato o qualora lo richiedano particolari esigenze relative alla struttura ed all'oggetto della Società; in questi casi gli amministratori segnalano nella relazione prevista dall'articolo 2428 c.c. le ragioni della dilazione.

L'assemblea straordinaria delibera sulle modificazioni dello statuto, sulla nomina, sulla sostituzione e sui poteri dei liquidatori e su ogni altra materia espressamente attribuita dalla legge alla sua competenza.

Articolo 14

Convocazione dell'assemblea

L'assemblea può essere convocata anche fuori dal Comune in cui è posta la sede sociale, purché nel territorio di un altro Stato membro dell'Unione Europea.

L'assemblea dovrà essere convocata dall'Organo Amministrativo, o dal Collegio Sindacale in caso di sua impossibilità o inattività, anche quando ne è fatta domanda da tanti soci che rappresentino almeno un decimo del capitale sociale.

L'assemblea è convocata dall'Organo Amministrativo mediante avviso contenente l'indicazione del giorno, dell'ora e del luogo dell'adunanza e l'elenco delle materie da trattare.

L'avviso deve essere pubblicato almeno quindici (15) giorni prima di quello fissato per l'assemblea, nella Gazzetta Ufficiale o in almeno uno dei seguenti quotidiani: "Corriere della Sera", "Il Mattino", "La Repubblica".

9

In deroga al comma precedente, è consentita la convocazione mediante avviso comunicato ai soci con mezzi che garantiscano la prova dell'avvenuto ricevimento almeno otto (8) giorni prima dell'assemblea.

In mancanza delle formalità suddette, l'assemblea si reputa regolarmente costituita quando è rappresentato l'intero capitale sociale e partecipa all'assemblea la maggioranza dei componenti degli organi amministrativi e di controllo. Tuttavia in tale ipotesi ciascuno dei partecipanti può opporsi alla discussione degli argomenti sui quali non si ritenga sufficientemente informato e dovrà essere data tempestiva comunicazione delle deliberazioni assunte ai componenti degli organi amministrativi e di controllo non presenti.

Articolo 15

Costituzione dell'Assemblea e validità delle deliberazioni

Possono intervenire all'assemblea gli azionisti cui spetta il diritto di voto.

Ai fini dell'intervento non è necessario il preventivo deposito delle azioni o della relativa certificazione presso la sede sociale entro tre (3) giorni da quello fissato per l'assemblea.

L'assemblea potrà svolgersi anche in più luoghi, contigui o distanti, audio-video collegati, con modalità delle quali dovrà essere dato atto nel verbale. Non è consentito il voto per corrispondenza.

L'assemblea è presieduta dall'Amministratore unico o dal Presidente del Consiglio di Amministrazione o, in mancanza, dalla persona eletta con il voto della maggioranza dei presenti. Il Presidente è assistito da un Segretario designato dall'Assemblea. L'assistenza del Segretario non è necessaria quando il verbale dell'assemblea è redatto da un Notaio.

10

I soci possono farsi rappresentare nell'Assemblea. La rappresentanza deve essere conferita per iscritto e i documenti relativi devono essere conservati dalla Società, nei termini e con i limiti previsti dall'articolo 2372 c.c.

L'assemblea ordinaria in prima convocazione è regolarmente costituita con l'intervento di tanti soci che rappresentino almeno la metà del capitale sociale.

L'assemblea ordinaria in seconda convocazione è regolarmente costituita qualunque sia la parte di capitale sociale rappresentata.

L'assemblea ordinaria, in prima, seconda e in ogni ulteriore convocazione, delibera con il voto favorevole della maggioranza assoluta dei presenti. Tuttavia non si intende approvata la delibera che rinunzia o che transige sull'azione di responsabilità nei confronti degli amministratori, se consta il voto contrario di almeno un quinto del capitale sociale.

L'assemblea straordinaria in prima convocazione è regolarmente costituita e delibera con il voto favorevole di più della metà del capitale sociale.

In seconda o terza convocazione l'assemblea straordinaria è validamente costituita con l'intervento di tanti soci che rappresentino oltre 1/3 (un terzo) del capitale sociale e delibera con il voto favorevole di almeno i due terzi del capitale rappresentato in assemblea.

Tuttavia è comunque richiesto il voto favorevole di tanti soci che rappresentino più di un terzo del capitale sociale per le delibere inerenti:

a) il cambiamento dell'oggetto sociale;

b) la trasformazione;

c)lo scioglimento anticipato;

d)la proroga della durata;

e)la revoca dello stato di liquidazione;

f)il trasferimento della sede sociale all'estero;

g)l'emissione di azioni di cui al II comma dell'articolo 2351 c.c.

L'introduzione e la soppressione di clausole compromissorie devono essere approvate con il voto favorevole di tanti soci che rappresentino almeno i due terzi del capitale sociale. I soci assenti o dissenzienti possono, entro i successivi novanta giorni, esercitare il diritto di recesso ai sensi dell'art. 12 del presente statuto.

Articolo 16

AMMINISTRAZIONE E RAPPRESENTANZA

La società può essere amministrata:

a) o da un Consiglio di Amministrazione composto da tre a nove membri;

b) ovvero da un Amministratore Unico.

Gli amministratori, che possono essere anche non soci, durano in carica per tre esercizi e sono rieleggibili.

L'Organo amministrativo è investito dei più ampi poteri per la gestione ordinaria e straordinaria della società, ed ha facoltà di compiere tutti gli atti che ritenga opportuni per l'attuazione ed il raggiungimento degli scopi sociali, esclusi gli atti riguardanti la vendita di navi che dovranno essere autorizzati dall'assemblea.

Sono inoltre attribuite all'organo amministrativo le seguenti competenze:

a)la delibera di fusione e scissione nei casi di cui agli artt. 2505, 2505 bis, 2506 ter ultimo comma c.c.;

b)l' istituzione e soppressione di sedi secondarie;

c)l'indicazione di quali amministratori abbiano la rappresentanza della società, qualora non vi abbia provveduto l'assemblea;

d)la riduzione del capitale sociale in caso di recesso del socio;

e)l'adeguamento dello Statuto sociale a disposizioni normative;

f)il trasferimento della sede sociale in altro comune del territorio nazionale.

Gli amministratori non sono tenuti all'osservanza del divieto di concorrenza sancito dall'art. 2390 c.c.

Il Presidente del Consiglio di Amministrazione o l'Amministratore Unico hanno la firma sociale e la rappresentanza legale della Società di fronte ai terzi ed in giudizio.

La rappresentanza legale della Società spetta, altresì, agli Amministratori delegati nei limiti della delega concessa loro dal Consiglio di Amministrazione.

L'Organo Amministrativo potrà nominare direttori tecnici e/o procuratori, per particolari atti o categorie di atti determinandone di volta in volta poteri e facoltà.

Il compenso dell'Organo Amministrativo e l'eventuale rimborso delle spese sostenute per ragione del loro ufficio sono stabiliti dall'assemblea ai sensi dell'articolo 2389 c.c.

Se nel corso dell'esercizio vengono a mancare uno o più amministratori, gli altri provvedono a sostituirli con deliberazione approvata dal collegio sindacale, purché la maggioranza sia sempre costituita da amministratori nominati dall'assemblea (o nell'atto costitutivo). Gli amministratori così

nominati restano in carica fino alla successiva assemblea.

Qualora venga meno la maggioranza degli amministratori nominati dall'assemblea (o nell'atto costitutivo), quelli rimasti in carica devono convocare l'assemblea per la sostituzione degli amministratori mancanti.

Gli amministratori così nominati scadono insieme a quelli in carica all'atto della loro nomina.

ARTICOLO 17

CONSIGLIO DI AMMINISTRAZIONE

Il Consiglio di Amministrazione può delegare le proprie attribuzioni ad un Comitato esecutivo composto da alcuni dei suoi componenti, o ad uno o più dei suoi componenti, determinando il contenuto, i limiti e le modalità di esercizio della delega.

Il Consiglio si raduna nel luogo indicato nell'avviso di convocazione, nella sede sociale o altrove, tutte le volte che ciò sia ritenuto necessario dal Presidente, dal Collegio Sindacale o anche da almeno due dei consiglieri.

La convocazione è fatta almeno cinque giorni prima della riunione con lettera da spedire mediante fax, telegramma o posta elettronica.

Per la validità delle deliberazioni del Consiglio di Amministrazione, è necessaria la presenza della maggioranza degli Amministratori in carica.

Le deliberazione del Consiglio di Amministrazione sono prese a maggioranza assoluta dei presenti. Il voto non può essere dato per rappresentanza.

Il Consiglio può validamente deliberare anche mediante mezzi di telecomunicazione, purchè i partecipanti possano rendersi conto in tempo

reale degli eventi ed esprimere tempestivamente il proprio voto.

## Articolo 18

### COLLEGIO SINDACALE

Il Collegio Sindacale si compone di tre membri effettivi e due supplenti, aventi i requisiti previsti dall'articolo 2397 c.c. (o dell'articolo 2409 bis c.c. nell'ipotesi prevista al secondo comma del successivo articolo 19).

I sindaci rimangono in carica per tre esercizi ed il loro compenso è determinato dall'assemblea all'atto della nomina per l'intero periodo di durata del loro ufficio.

Il collegio Sindacale deve riunirsi almeno ogni novanta (90) giorni e la riunione può svolgersi anche con mezzi telematici.

## Articolo 19

### IL CONTROLLO CONTABILE

Il controllo contabile della Società è esercitato da un revisore contabile o da una Società di revisione iscritti nel registro istituito presso il Ministero della Giustizia.

Il controllo contabile della Società può anche essere esercitato dal Collegio Sindacale, ai sensi dell'articolo 2409 - bis, terzo comma c.c.

In tal caso l'intero Collegio Sindacale sarà costituito da Revisori Contabili iscritti nel Registro istituito presso il Ministero della Giustizia.

L'attività di controllo contabile è annotata in un apposito libro conservato presso la sede sociale.

L'assemblea, nel nominare il revisore, deve anche determinarne il corrispettivo per tutta la durata dell'incarico, che non può eccedere i tre esercizi sociali.

Articolo 20

Bilancio e utili

Gli esercizi sociali si chiudono il 31 dicembre di ogni anno.

Gli utili netti risultanti dal bilancio, dedotto almeno il 5% (cinque per cento) da destinare a riserva legale fino a che questa non abbia raggiunto il quinto del capitale sociale, verranno ripartiti tra i soci in misura proporzionale alla partecipazione azionaria da ciascuno posseduta, salvo diversa delibera assembleare.

Articolo 21

Scioglimento e liquidazione

La Società si scioglie nei casi e nei modi previsti dalla legge, ai sensi dell'articolo 2484 c.c.

Addivenendosi in qualunque momento e per qualsiasi causa allo scioglimento della società, l'assemblea, con le maggioranze previste per le modificazioni dell'atto costitutivo, provvederà ad indicare le modalità ed i criteri della liquidazione ed a nominare uno o più liquidatori determinandone i poteri ed il compenso.

Articolo 22

DISPOSIZIONI GENERALI

Per quanto non previsto dal presente statuto, si fa riferimento alle vigenti disposizioni di legge in materia.

Il presente statuto e' quello a tutt'oggi vigente.

16



"Article 1"
Company's name

A Limited Company is hereby established named "RIZZO-BOTTIGLIERI-DE CARLINI-ARMATORI –Società per Azioni" also said "RBD – ARMATORI S.p.A." .

Thereupon the Chairman has handed me the new Articles of Association being updated with the modification as here resolved which is hereto attached under letter "A" as an integral part of the same Articles.

I am exempted from reading the attachment as the Chairman has declared she has already read it.

There being no further business to be transacted the Chairman has closed the meeting at six o'clock pm after these minutes have been written and subscribed.

This deed has been electronically written by myself and partially by a person of my trust and has been read by myself, the Notary Public, to the Chairman who has approved it by undersigning it at five past six pm this day.

This deed in Italian consists of five pages.

dott.ssa Grazia Bottiglieri

Nicola Capuano, Notary Public seal

Attachment "A" to deed n. 27987 of File n.

ARTICLES OF ASSOCIATION

Article 1
Company's name

A Limited Company is hereby established named "RIZZO-BOTTIGLIERI-DE CARLINI-ARMATORI –Società per Azioni" also said "RBD – ARMATORI S.p.A.".

Article 2
Legal office

The Company has its registered office in Torre del Greco (NA).

Article 3
Company's purposes

The company is a shipping business operating by means of proprietary vessels or vessels of third parties and by the engagement of the relative crews. It is also entitled to the purchase, the sale, the rent, the exchange and the operation of vessels and any kind of crafts by:

- providing sea transportation services, also regular ones, also on behalf of the public administration for national and international transport;

- operating, directly or on the account of third parties stations, stations for the purchase and sale of fuel;

- constructing ships and destroying wrecks;

- carrying out import-export activities;

- trading national and foreign shipping materials;

- providing land transport as ancillary to transport by sea.

The company will also carry out the following business:

- the purchase, sale and exchange, also partial, of buildings for dwelling or for commercial or industrial purposes, including tourist ones, the purchase and sale of land and farms and of real

estate, the management of corporate immovables or third parties' ones, including the hire and rent of the same, also if in joint ownership, whether furnished or not;

direct and indirect hotel trading, catering, operation of night-clubs, and any other related tourist trade including tour-operator services and the organization of conferences, workshops and cultural and entertainment events.

The company has been established with the purpose of starting up a new business, and may avail of any government benefits and incentives provided in favour of enterprises. The company may in conclusion perform all actions required for the achievement of the corporate purposes provided they are not its main concern and they are not addressed to the general public:

- the company may thus perform any commercial, industrial, real-estate, banking, financial and housing mortgage transactions;

- it may also resort to any kind of financial institutions, banks, Companies and individuals for funding by granting adequate collateral and personal securities;

- it may thus grant loans, sureties and collateral securities to the benefit of third parties;

- it may acquire shareholdings and participations of companies, also foreign ones, having the same or similar corporate object;

- it may lastly take part in consortiums and joint ventures.


Article 4
Company's life

The Company's duration is fixed up until 31st December 2050. It may be extended one or more times by resolution of the Meeting.


Article 5
Shareholders' address

The address of the shareholders, directors and auditors is as reported in the stock ledger.


Article 6
Capital stock and shares

The capital stock amounts to Euros 14,500,000.00 (fourteenmillionfivehundredthousand) and is divided into 1,450,000 shares having a par value of Euros ten (10) each.


Article 7
Financial instruments

The company, by a resolution of the extraordinary meeting with the majorities as per art. 15 of these articles of association may issue financial instruments provided with equity claims or administrative rights excluding the right to vote in the general meeting of the shareholders.

The holders of financial instruments are entitled to appoint an independent member of the board of auditors, by resolution of their special meeting which is subject to the same provisions of these articles of association concerning the general meeting.


Article 8
Obligations

By resolution of the Board, the Company may issue bonded loans and, by resolution of the extraordinary meeting, may issue convertible bonded loans.

The Board of Directors on resolving about the issue of a bonded loan as prescribed by the article 2436 of the Italian Civil Code shall comply with the procedures provided for in article 2410 and subsequents of the Italian Civil Code.



## Article 9
### Allotment of funds

The company may allot funds for a special business as provided for by articles 2447 bis and subsequents of the Italian Civil Code.

The relative resolution shall be adopted by the extraordinary Meeting in compliance with article 15 of these articles of association.

## Article 10
### Funds

The company may obtain funds for a valuable consideration or for free by its shareholders with or without obligation for reimbursement in compliance with current regulations, especially those regulating the collection of public savings.

## Article 11
### Transfer of shares

Shares may be freely transferred by deed mortis causa while they may be transferred by deed inter vivos at the following conditions.

11.1.1. By "transfer" it is meant the transfer by deed inter vivos and in case of death it is intended a transfer of shares or rights of pre-emption.

By "share" shares and rights of pre-emption are to be intended.

11.1.2 By "transfer by deed inter vivos" any type of transfer, in its broadest meaning, is to be intended including also exchange contracts, giving in payment and transfer of ownership as security. In all cases when the type of transaction does not imply a consideration or the consideration is in kind, the shareholders will purchase the shares by paying the offeror the sum fixed by mutual agreement, or differently by an arbitrator, as specified below.

11.1.3. The registration in the name of a trust or the registration by the same trust in the name of the actual holders (by previous submittal of the contract of trusteeship) is not subject to this article.

11.1.4. By "transfer in case of death" the legal or testamentary succession of a shareholder is also intended, both universal and particular.

11.1.5. In case of transfer of shares by deed inter vivos performed without complying with the following prescriptions, the purchaser will not be entitled to be registered in the stock ledger, to the right to vote and to the other administrative rights and may not transfer the shares to the Company.

11.2.1. Shares may be freely transferred only in favour of the legal spouse of a member; of persons related in direct or collateral line with a member, parent companies, subsidiaries, associated or belonging to the same group. In any other case of transfer of shares to members duly registered in the stock ledger, the pre-emptive right will prevail for the purchase. That means that the member who wishes to transfer all or part of its shares differently as above, must previously offer them to the other members proportionally to the number of shares held by each and at the current value. Shares which will not be purchased by a member must be offered to other members at the same conditions. Only shares which will not be sold after this second offer may be transferred to third parties. The shareholder who wishes to sell its shares except for free transfers, shall inform the Administrative Board by registered letter with return receipt, specifying the number of shares, the price requested and the name of the recipient.

The administrative board will try to sell them to members as above indicated, or will propose the Meeting the purchase of these shares by the Company according to prescriptions of article 2357 of the Italian Civil Code.

In case the seller and the purchasers will not agree about the price of shares, the parties will appoint a sole arbitrator who will fix the price of transfer under fair and objective criteria.

In case no agreement is reached about the appointment of the sole arbitrator the same will be appointed by the President of the Court where the company is sited, on request of the party who first takes action.

On fixing the price the arbitrator will take into account the updated company's equity, its profitability, the value of the company's intangible and tangible assets and the market position.

11.2.2. The cost of the arbitrator will be borne by half by:

the shareholders who have exerted the pre-emptive right proportionally to their holdings and by the other half by the offeror.

11.2.3. In case the preemptive right is not exerted for all the shares offered, the offeror, in case he does not accept the exertion of the preemptive right only for a part of the same shares, will be free to transfer all the shares to the purchaser indicated in the advise note within 15 (fifteen) days from the day of reception of the same note by the shareholders. Differently, in case he accepts the exercise of the preemptive right for part of the shares, he may transfer this number of shares to the member who has asserted the preemptive right at the conditions agreed upon within 15 (fifteen) days.

11.2.4. All the shareholders are entitled to the pre-emptive right also in case of transfer of bare ownership and usufruct of the same. No pre-emptive right may be exerted in case of pledge.

### Article 12
### Withdrawal

Shareholders who have not contributed to the approval of the resolutions concerning the following items are entitled to withdraw:

a) amendment of the clause concerning the company's purposes, when it involves a decisive change of the company's business;

b) the transformation of the company;

c) the transfer of the head office abroad;

d) the revocation of liquidation;

e) modification of criteria fixing the value of the share in case of withdrawal;

f) amendments of the articles of association concerning rights to vote or to participate;

g) the extension of terms of expiration;

h) the introduction or the removal of restraints to the circulation of shares.

Terms and modalities for the assertion of the right of withdrawal, criteria for fixing the value of shares for which the withdrawal is asserted and the procedure for liquidation are regulated by articles 2437 bis-ter-quater-quinquies and sexies of the Italian Civil Code.

### Article 13
### General Meeting

The Ordinary General Meeting resolves what is under its authority and responsibility and shall be called at least once a year within four months from the closing of the corporate year. It may be called within the max term of one hundredeighty (180) days, in case the Company is obliged to the drafting of the consolidated financial statements or if required by the organization and purposes of the Company. In these cases the directors will report the reasons for the extension in the notes prescribed by the art. 2428 of the Italian Civil Code.

The extraordinary Meeting will resolve about the modifications of the articles of association, on the appointment, substitution and on the authorities of liquidators and on any subject explicitly provided for by law.



### Article 14
### Call of the Meeting

The general meeting may be summoned in a different location from the company's legal seat provided it is in another state of the European Union.

It shall be summoned by the Board of Directors or, differently, by the Board of Auditors also on demand of a tenth of the capital stock.

The Board of Directors shall summon the general meeting by way of a notice of call including the venue, the date and time of the meeting as well as the agenda to be discussed.

The notice of call shall be published in the official gazzette of the Italian Republic or in one of the following newspapers "Corriere della Sera", "Il Mattino", "La Repubblica", at least fifteen (15) days before the day fixed for the meeting.

Notwithstanding the paragraph above, the meeting may be summoned by any other means attesting the confirmation of delivery to the addressees eight (8) days before the date fixed at least.

In case the above conditions are not complied with, the meeting is regularly constituted when the total capital stock is represented and the majority of the Board of Directors and of the Board of Auditors are attending. However in this case each of the participants may object to the discussion of matters on which he has not been informed adequately. Timely communication about the resolutions passed shall be given to the members of the Boards of Directors and Auditors non attending.

### Article 15
### Validity of the Meeting's resolutions

The shareholders with the right to vote are entitled to participate in the general meeting.

The previous deposit of shares or their relative certifications with the corporate seat within three (3) days from the date of the meeting is not required for participation.

The general meeting may be contemporarily held also in separated venues connected by audio/video communication devices with modalities which will be duly reported in the minutes. The vote via mail is not admitted.

The Meeting is chaired by the Sole Director, by the Chairman of the Board of Directors or, in case the latter is missing, by a person appointed by the majority of the shareholders attending. The Chairman is assisted by a Secretary appointed by those actually present at the General Meeting. The Secretary's support is not required when the the minutes of the meeting are written by a Notary Public.

Shareholders are entitled to be represented by any other person authorized by means of a written proxy according to article 2372 of the Italian Civil Code.

The ordinary meeting on first call is regularly constituted when at least half of the capital stock is attending.

The ordinary meeting on second call is regularly constituted regardless of the number of shareholders attending.

Resolutions are passed if approved by the full majority of the members attending the meeting on first, second and on any further call.

Notwithstanding the resolution is not considered approved when renouncing to act against the directors if a fifth of the capital stock at least does not approve it.

The extraordinary meeting on first call is regularly constituted and resolves by the favourable vote of more than half of the capital stock.

On second or third call the extraordinary meeting is regularly constituted if more than one third of the capital stock is attending and its resolutions will be valid if approved by two thirds of the members attending.

The vote by more than a third of the capital stock is required for resolutions concerning:

7

a) the modification of corporate purposes;
b) the transformation of the company;
c) the advanced dissolution;
d) the extension of company's life;
e) the revokation of liquidation;
f) the transfer of the head office abroad;
g) the issue of shares as per paragraph II of article 2351 of the Italian Civil Code.

The introduction and cancellation of arbitration clauses shall be approved with the favourable right of two thirds of the capital stock. The absentees and the dissenters, may within the following ninety days, exert the right of withdrawal subject to art. 12 of these articles of association.

### Article 16
## COMPANY'S MANAGEMENT AND REPRESENTATION

The company can be administered:
a) by a Board of Directors of three to nine members;
b) or by a Sole Director.

The directors, who may also be non-subscribers, hold their office for three years and may be reelected.

The Board is invested with full powers as concerns the ordinary and extraordinary management of the company, and has the authority to perform all the necessary and proper actions required for the implementation and the achievement of the company's objectives, excluding deeds for the sale of ships which must be authorized by the general meeting.

The Board is also entrusted with the following powers:
a) the resolution concerning the company amalgamation and division as provided by articles 2505, 2505-bis, 2506-ter last paragraph of the Italian Civil Code;
b) the establishment and closing of branch offices;
c) identification of directors who may legally represent the company, in case the general meeting has not provided for it before;
d) the reduction of the company's capital stock in case of withdrawal of a member;
e) the amendment of the articles of association in compliance to new provisions of law;
f) the transfer of the head office to a different location of the national territory.

The directors are not required to comply with the non-competition clause laid down in art. 2390 of the Italian Civil Code.

The Chairman of the Board or the Sole Director are entitled with the power of signing on behalf of the company and shall represent the company vis-a-vis third parties and in lawsuits.

The managing directors are also entitled to represent the company if thereto delegated by the Board of Directors.

The Board may appoint technical managers and/or proxies for single deeds or class of deeds by determining their powers from time to time.

The remuneration due to the directors and any reimbursement of expenses incurred for their office are determined by the general meeting as provided for in art. 2389 of the Italian Civil Code.

If one or more directors should be missing, the others will substitute them by a resolution passed by the Board of Auditors, provided the majority is represented by directors appointed by the general meeting (or in the articles of association). The directors thus appointed hold their office until the following meeting.

In case the majority of directors appointed by the general meeting (or in the articles of association) should be missing, those holding office will summon the general meeting for the substitution of the missing directors.

The directors thus appointed will fall from office together with those holding office at the time of their appointment.

## Article 17
## BOARD OF DIRECTORS

The Board of Directors may delegate its powers to an executive Board composed by some of its members or to one or more of its members, by fixing the object, limits and modalities of the proxy.
The Board is summoned in the venue indicated in the notice for call, any time it is required by the Chairman, the Board of Auditors or by two directors at least.
Shareholders are convened five days at least before the meeting by fax, cable or e-mail.
For a resolution to be valid the majority of Directors holding office shall be required.
Resolutions are passed only if approved by the majority of the members attending the meeting. The Board is entitled to resolve also by videoconference, provided its members may follow the meeting in real time and may timely express their vote.

## Article 18
## BOARD OF AUDITORS

The Board of Auditors consists of three members and two deputy members, having the requirements of article 2397 of the Italian Civil Code (or article 2409 bis in the case provided in the second paragraph of article 19 below).
The auditors hold their office for three years and the General Meeting appointing them will fix their remuneration for the whole period.
The Board of Auditors shall meet every ninety (90) days at least and the meeting may be held also by video-conference.

## Article 19
## AUDITING

Company's accounting control is performed by an auditor or an auditing company duly registered with the Ministry of Justice.
The accounting control may also be exerted by the Board of Auditors as prescribed by art. 2409 – bis, third paragraph of the Italian Civil Code.
In this case the Board of Auditors will consist of Auditors duly registered with the Ministry of Justice.
Accounting control is reported in books kept with the registered office.
The General Meeting appointing the auditor shall fix his/her remuneration for the whole period that shall not exceed three years.



### Article 20
#### Financial statements and profits

The accounting periods end on December 31st of each year.
Net profits for the year as resulting from the financial statements, minus a sum to be allocated as legal reserve amounting to 5% (five percent) of them at least, till the fifth of the capital stock, shall be allotted to the shareholders proportionally to their shareholding unless differently resolved by the general meeting.

### Article 21
#### Dissolution and liquidation

The Company is dissolved in cases and with modalities prescribed by law as provided for by article 2484 of the Italian Civil Code.
In case of dissolution of the company at any time and for any reason, the General Meeting will fix the manner of liquidation and will appoint one or more liquidators by fixing their powers and remuneration.

### Article 22
#### GENERAL PROVISIONS

Every other matter not expressly ruled by these Articles of Association will be governed by the Italian Civil Code and laws in force.

Dott.ssa Grazia Bottiglieri
Notary Public Nicola Capuano - seal

 10

# RIZZO DECLARATION
# EXHIBIT "C"

Prot.:CEW/40845/2011/CNA0239                                    28/10/2011

CAMERA DI COMMERCIO INDUSTRIA ARTIGIANATO E AGRICOLTURA DI NAPOLI
- UFFICIO REGISTRO DELLE IMPRESE -

CERTIFICATO DI ISCRIZIONE NELLA SEZIONE ORDINARIA

DATI IDENTIFICATIVI DELL'IMPRESA

Codice fiscale e numero d'iscrizione: 02751631215
del Registro delle Imprese di NAPOLI
data di iscrizione: 19/02/1996

Iscritta nella sezione ORDINARIA                          il 19/02/1996

Iscritta con il numero Repertorio Economico Amministrativo 513624  il 05/10/1993

Denominazione: RIZZO-BOTTIGLIERI-DE CARLINI ARMATORI SOCIETA' PER AZIONI
DETTA  ANCHE BREVEMENTE "  RBD ARMATORI S.P.A."

Forma giuridica: SOCIETA' PER AZIONI

Sede:
TORRE DEL GRECO (NA) VIALE OLIVELLA, 10 CAP 80059

Costituita con atto del 20/07/1993

Durata della società:
data termine: 31/12/2050

Oggetto Sociale:
LA SOCIETA' HA PER OGGETTO:
-LO SVOLGIMENTO DELL'ATTIVITA' ARMATORIALE IN CAMPO MARITTIMO MEDIANTE L'UTILIZZ
O DI NAVIGLIO PROPRIO E/O IN CONTO TERZI, L'ARMAMENTO E LA GESTIONE DI NAVI
PROPRIE E/O DI TERZI, L'ARRUOLAMENTO DEGLI EQUIPAGGI NONCHE'L'ACQUISTO, LA
VENDITA, LA LOCAZIONE NON FINANZIARIA, LA PERMUTA, LA GESTIONE DI NAVI E NATANTI
DI QUALSIASI GENERE CON FACOLTA'DI:
-ESERCITARE SERVIZI MARITTIMI DI QUALSIASI SPECIE, ANCHE DI LINEA, ANCHE PER
CONTO DELLO STATO E CON LA SUA PARTECIPAZIONE, IN PARTICOLARE TRASPORTI
NAZIONALI ED INTERNAZIONALI;
-GESTIRE PER CONTO PROPRIO E DI TERZI PUNTI DI DISTRIBUZIONE, L'ACQUISTO E LA
VENDITA DI CARBURANTI;
-COSTRUIRE NAVI E DEMOLIRE RELITTI;
-SVOLGERE ATTIVITA'DI IMPORTAZIONE ED ESPORTAZIONE;
-COMMERCIARE MATERIALE NAVALE NAZIONALE ED ESTERO;
-ESERCITARE ATTIVITA'VOLTA AL TRASPORTO TERRESTRE COMPLEMENTARE A QUELLO
MARITTIMO.
LA SOCIETA'SI PROPONE DI SVOLGERE ANCHE LE SEGUENTI ATTIVITA':
-L'ACQUISTO, LA VENDITA E LA PERMUTA, ANCHE FRAZIONATA, DI FABBRICATI PER CIVILI
ABITAZIONI, PER ESERCIZI COMMERCIALI E INDUSTRIALI, PER USO ALBERGHIERO E/O
TURISTICO, LA COMPRAVENDITA DI SUOLI E FONDI RUSTICI E DI BENI E DIRITTI
IMMOBILIARI IN GENERE; LA GESTIONE DEGLI IMMOBILI DI PROPRIETA'DELLA SOCIETA'O
DI TERZI, IVI COMPRESI L'AFFITTO E LA LOCAZIONE - NON FINANZIARIA - DEGLI
STESSI, ANCHE IN REGIME DI PROPRIETA'COMUNE TURNARIA INDIVISA, AMMOBILIATI E/O
NON AMMOBILIATI;
L'ESERCIZIO IN FORMA DIRETTA E/O INDIRETTA DELL'ATTIVIT' ALBERGHIERA, DI
RISTORAZIONE, NIGHT-CLUBS, E OGNI ALTRA ATTIVITA'TURISTICA CONNESSA, IVI
COMPRESE LE ATTIVITA'DI TOURS-OPERATOR E DI ORGANIZZAZIONE DI CONVEGNI, SEMINARI
E MANIFESTAZIONE A FONDO CULTURALE, ARTISTICO, RICREATIVO E TURISTICO.
LA SOCIETA', CHE COSTITUITA CON LA FINALITA'DI REALIZZARE NUOVE INIZIATIVE





Prot.:CEW/40845/2011/CNA0239                                      28/10/2011

PRODUTTIVE, POTRA' AVVALERSI DI TUTTE LE AGEVOLAZIONI ED INCENTIVI PREVISTI A
FAVORE DELLE IMPRESE, IVI COMPRESI QUELLI A FAVORE DELL'IMPRENDITORIA
GIOVANILE.
LA SOCIETA' PUO' INFINE COMPIERE TUTTI GLI ATTI OCCORRENTI PER L'ATTUAZIONE
DELL'OGGETTO SOCIALE, COSI' TRA L ALTRO, QUALE ATTIVITA' NON PREVALENTE E DA
ESERCITARSI NON NEI CONFRONTI DEL PUBBLICO:
-COMPIERE OPERAZIONI COMMERCIALI, INDUSTRIALI, IMMOBILIARI, BANCARIE,
FINANZIARIE E IPOTECARIE;
-RICORRERE A QUALSIASI FORMA DI FINANZIAMENTO CON ISTITUTI DI CREDITO, BANCHE,
SOCIETA' E PRIVATI, CONCEDENDO LE OPPORTUNE GARANZIE REALI E PERSONALI;
-CONCEDERE FIDEIUSSIONI, AVALLI E GARANZIE REALI A FAVORE DI TERZI;
-ASSUMERE PARTECIPAZIONI ED INTERESSENZE IN SOCIETA' ANCHE NON CHE ESTERE ED ENTI AVENTI
OGGETTO ANALOGO OD AFFINE AL PROPRIO;
-PARTECIPARE A CONSORZI E RAGGRUPPAMENTI DI IMPRESE.".
---------------------------------------------------------------------------------
INSEGNA DELLA SOCIETA':
" RIZZO-BOTTIGLIERI-DE CARLINI ARMATORI S.P.A." O " RBD ARMATORI S.P.A. "
---------------------------------------------------------------------------------

                        SISTEMA DI AMMINISTRAZIONE E CONTROLLO

- CONSIGLIO DI AMMINISTRAZIONE
numero componenti in carica: 5
durata in carica FINO APPROVAZIONE DEL BILANCIO

COLLEGIO SINDACALE:
- Sindaci effettivi
numero componenti in carica: 3
durata in carica per 3 ANNI
- Sindaci supplenti
numero componenti in carica: 2
durata in carica per 3 ANNI

                        INFORMAZIONI SULLO STATUTO

Poteri da Statuto:
LA SOCIETA' PUO' ESSERE AMMINISTRATA:
A) O DA UN CONSIGLIO DI AMMINISTRAZIONE COMPOSTO DA TRE A NOVE MEMBRI;
B) OVVERO DA UN AMMINISTRATORE UNICO.
GLI AMMINISTRATORI, CHE POSSONO ESSERE ANCHE NON SOCI, DURANO IN CARICA PER TRE
ESERCIZI E SONO RIELEGGIBILI.
L'ORGANO AMMINISTRATIVO E' INVESTITO DEI PIU' AMPI POTERI PER LA GESTIONE
ORDINARIA E STRAORDINARIA DELLA SOCIETA', ED HA FACOLTA' DI COMPIERE TUTTI GLI
ATTI CHE RITENGA OPPORTUNI PER L'ATTUAZIONE ED IL RAGGIUNGIMENTO DEGLI SCOPI
SOCIALI, ESCLUSI GLI ATTI RIGUARDANTI LA VENDITA DI NAVI CHE DOVRANNO ESSERE
AUTORIZZATI DALL'ASSEMBLEA.
SONO INOLTRE ATTRIBUITE ALL'ORGANO AMMINISTRATIVO LE SEGUENTI COMPETENZE:
A) LA DELIBERA DI FUSIONE E SCISSIONE NEI CASI DI CUI AGLI ARTT. 2505, 2505 BIS,
2506 TER ULTIMO COMMA C.C.;
B) L' ISTITUZIONE E SOPPRESSIONE DI SEDI SECONDARIE;
C) L'INDICAZIONE DI QUALI AMMINISTRATORI ABBIANO LA RAPPRESENTANZA DELLA
SOCIETA', QUALORA NON VI ABBIA PROVVEDUTO L'ASSEMBLEA;
D) LA RIDUZIONE DEL CAPITALE SOCIALE IN CASO DI RECESSO DEL SOCIO;
E) L'ADEGUAMENTO DELLO STATUTO SOCIALE A DISPOSIZIONI NORMATIVE;
F) IL TRASFERIMENTO DELLA SEDE SOCIALE IN ALTRO COMUNE DEL TERRITORIO
NAZIONALE.
GLI AMMINISTRATORI NON SONO TENUTI ALL'OSSERVANZA DEL DIVIETO DI CONCORRENZA

Pagina 2/ 7



Prot.:CEW/40845/2011/CNA0239                                          28/10/2011

SANCITO DALL1ART. 2390 C.C.
IL PRESIDENTE DEL CONSIGLIO DI AMMINISTRAZIONE O L'AMMINISTRATORE UNICO HANNO LA
FIRMA SOCIALE E LA RAPPRESENTANZA LEGALE DELLA SOCIETA'DI FRONTE AI TERZI ED IN
GIUDIZIO.
LA RAPPRESENTANZA LEGALE DELLA SOCIETA' SPETTA, ALTRESI', AGLI AMMINISTRATORI
DELEGATI NEI LIMITI DELLA DELEGA CONCESSA LORO DAL CONSIGLIO DI
AMMINISTRAZIONE.
L'ORGANO AMMINISTRATIVO POTRA' NOMINARE DIRETTORI TECNICI E/O PROCURATORI, PER
PARTICOLARI ATTI O CATEGORIE DI ATTI DETERMINANDONE DI VOLTA IN VOLTA POTERI E
FACOLTA' .
IL COMPENSO DELL'ORGANO AMMINISTRATIVO E L'EVENTUALE RIMBORSO DELLE SPESE
SOSTENUTE PER RAGIONE DEL LORO UFFICIO SONO STABILITI DALL'ASSEMBLEA AI SENSI
DELL'ARTICOLO 2389 C.C.
SE NEL CORSO DELL'ESERCIZIO VENGONO A MANCARE UNO O PIU'AMMINISTRATORI, GLI
ALTRI PROVVEDONO A SOSTITUIRLI CON DELIBERAZIONE APPROVATA DAL COLLEGIO
SINDACALE, PURCHE'LA MAGGIORANZA SIA SEMPRE COSTITUITA DA AMMINISTRATORI
NOMINATI DALL'ASSEMBLEA (O NELL'ATTO COSTITUTIVO). GLI AMMINISTRATORI COSI'
NOMINATI RESTANO IN CARICA FINO ALLA SUCCESSIVA ASSEMBLEA.
QUALORA VENGA MENO LA MAGGIORANZA DEGLI AMMINISTRATORI NOMINATI DALL'ASSEMBLEA
(O NELL'ATTO COSTITUTIVO), QUELLI RIMASTI IN CARICA DEVONO CONVOCARE L'ASSEMBLEA
PER LA SOSTITUZIONE DEGLI AMMINISTRATORI MANCANTI.
GLI AMMINISTRATORI COSI'NOMINATI SCADONO INSIEME A QUELLI IN CARICA
ALL'ATTO DELLA LORO NOMINA.

RIPARTIZIONE DEGLI UTILI E DELLE PERDITE TRA I SOCI
GLI ESERCIZI SOCIALI SI CHIUDONO IL 31 DICEMBRE DI OGNI ANNO.
GLI UTILI NETTI RISULTANTI DAL BILANCIO, DEDOTTO ALMENO IL 5% (CINQUE PER CENTO)
DA DESTINARE A RISERVA LEGALE FINO A CHE QUESTA NON ABBIA RAGGIUNTO IL QUINTO
DEL CAPITALE SOCIALE, VERRANNO RIPARTITI TRA I SOCI IN MISURA PROPORZIONALE ALLA
PARTECIPAZIONE AZIONARIA DA CIASCUNO POSSEDUTA, SALVO DIVERSA DELIBERA
ASSEMBLEARE.

Poteri associati alla carica di REVISORE DEI CONTI:
AL COLLEGIO SINDACALE E' AFFIDATO IL CONTROLLO CONTABILE DELLA SOCIETA'

Clausole di recesso:
HANNO DIRITTO DI RECEDERE I SOCI CHE NON HANNO CONCORSO ALL'APPROVAZIONE DELLE
DELIBERAZIONI RIGUARDANTI:
A) LA MODIFICA DELLA CLAUSOLA DELL'OGGETTO SOCIALE, QUANDO CONSENTE UN
CAMBIAMENTO SIGNIFICATIVO DELL'ATTIVITA'DELLA SOCIETA' ;
B) LA TRASFORMAZIONE DELLA SOCIETA' ;
C) IL TRASFERIMENTO DELLA SEDE SOCIALE ALL'ESTERO;
D) LA REVOCA DELLO STATO DI LIQUIDAZIONE;
E) LA MODIFICA DEI CRITERI DI DETERMINAZIONE DEL VALORE DELL'AZIONE IN CASO DI
RECESSO;
F) LE MODIFICAZIONI DELLO STATUTO CONCERNENTI I DIRITTI DI VOTO O DI
PARTECIPAZIONE;
G) LA PROROGA DEL TERMINE;
H) L'INTRODUZIONE O LA RIMOZIONE DI VINCOLI ALLA CIRCOLAZIONE DEI TITOLI
AZIONARI.
I TERMINI E LE MODALITA' DI ESERCIZIO PER IL DIRITTO DI RECESSO, I CRITERI DI
DETERMINAZIONE DEL VALORE DELLE AZIONI PER LE QUALI IL RECESSO E' ESERCITATO ED
IL PROCEDIMENTO DI LIQUIDAZIONE SONO REGOLATI DAGLI ARTICOLI 2437
BIS-TER-QUATER-QUINQUIES E SEXIES C.C.

INFORMAZIONI PATRIMONIALI E FINANZIARIE

Capitale Sociale in EURO:



Prot.:CBW/40845/2011/CNA0239                                            28/10/2011

deliberato          14.500.000,00
sottoscritto        14.500.000,00
versato             14.500.000,00

Strumenti finanziari previsti dallo statuto:

- altri strumenti finanziari
LA SOCIETA', CON DELIBERA DA ASSUMERSI DA PARTE DELL'ASSEMBLEA STRAORDINARIA CON
LE MAGGIORANZE DI CUI ALL'ARTICOLO 15 DEL PRESENTE STATUTO, PUO' EMETTERE
STRUMENTI FINANZIARI FORNITI DI DIRITTI PATRIMONIALI O DI DIRITTI
AMMINISTRATIVI, ESCLUSO IL DIRITTO DI VOTO NELL'ASSEMBLEA GENERALE DEGLI
AZIONISTI.
I TITOLARI DEGLI STRUMENTI FINANZIARI HANNO DIRITTO DI NOMINARE UN COMPONENTE
INDIPENDENTE DEL COLLEGIO SINDACALE, MEDIANTE DELIBERA DELLA LORO ASSEMBLEA
SPECIALE DI APPARTENENZA, ALLA QUALE SI APPLICANO LE DISPOSIZIONI DETTATE DAL
PRESENTE STATUTO IN MATERIA DI ASSEMBLEA DEI SOCI.

                         OPERAZIONI STRAORDINARIE

Progetto di fusione mediante incorporazione della società
- CASASOLE R.E. S.R.L.
(NA)   Numero REA 711927
Codice Fiscale: 04755731215
Data iscrizione: 25/10/2006
Data atto: 19/10/2006

Fusione mediante incorporazione di:
- CASASOLE R.E. S.R.L.
Sede: TORRE DEL GRECO (NA)   Numero REA 711927
Codice Fiscale: 04755731215
Data iscrizione: 26/10/2006   Data modifica: 29/12/2006
Data delibera: 25/10/2006   Esecuzione con atto del   28/12/2006

Progetto di fusione mediante incorporazione della società
- RIZZO - BOTTIGLIERI - DE CARLINI   SHIPPING COMPANY SOCIETA' A
Sede: TORRE DEL GRECO
Codice Fiscale: 06076391215
Data iscrizione: 19/01/2010
Data atto: 12/01/2010

Fusione mediante incorporazione di:
- RIZZO - BOTTIGLIERI - DE CARLINI   SHIPPING COMPANY SOCIETA' A
Sede: TORRE DEL GRECO
Codice Fiscale: 06076391215
Data iscrizione: 29/04/2010   Data modifica: 05/07/2010
Data delibera: 27/04/2010   Esecuzione con atto del   30/06/2010

                              ATTIVITA'

Attività prevalente esercitata dall'impresa:
TRASPORTI MARITTIMI.

Data d'inizio dell'attività dell'impresa: 20/03/1995

                    TITOLARI DI CARICHE O QUALIFICHE

* BOTTIGLIERI GRAZIA (rappresentante dell'impresa)



Prot.:CEW/40845/2011/CNA0239                                    28/10/2011

nata a TORRE DEL GRECO (NA) il 26/03/1946
codice fiscale: BTTGRZ46C66L259Z
firma depositata
- PRESIDENTE CONSIGLIO AMMINISTRAZIONE   nominato con atto del 26/04/2011
presentazione il 09/05/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Poteri:
LA RAPPRESENTANZA LEGALE DELLA SOCIETA'
- AMMINISTRATORE DELEGATO   nominato con atto del 26/04/2011
presentazione il 09/05/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Poteri:
DI CONFERIRE AGLI AMMINISTRATORI DELEGATI DISGIUNTAMENTE TUTTI I POTERI DI
ORDINARIA E STRAORDINARIA AMMINISTRAZIONE, CON LA SOLA ESCLUSIONE DEI POTERI
CHE PER LEGGE SONO RISERVATI AL CONSIGLIO DI AMMINISTRAZIONE;
- CONSIGLIERE   nominato con atto del 26/04/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013

* BOTTIGLIERI ORSOLA (rappresentante dell'impresa)
nata a NAPOLI (NA) il 18/10/1956
codice fiscale: BTTRSL56R58F839Q
- CONSIGLIERE   nominato con atto del 26/04/2011
presentazione il 09/05/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
- AMMINISTRATORE DELEGATO   nominato con atto del 26/04/2011
presentazione il 09/05/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Poteri:
DI CONFERIRE AGLI AMMINISTRATORI DELEGATI DISGIUNTAMENTE TUTTI I POTERI DI
ORDINARIA E STRAORDINARIA AMMINISTRAZIONE, CON LA SOLA ESCLUSIONE DEI POTERI
CHE PER LEGGE SONO RISERVATI AL CONSIGLIO DI AMMINISTRAZIONE;

* RIZZO GIUSEPPE MAURO (rappresentante dell'impresa)
nato a NAPOLI (NA) il 08/08/1971
codice fiscale: RZZGPP71M15F839U
- CONSIGLIERE   nominato con atto del 26/04/2011
presentazione il 09/05/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
- AMMINISTRATORE DELEGATO   nominato con atto del 26/04/2011
presentazione il 09/05/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Poteri:
DI CONFERIRE AGLI AMMINISTRATORI DELEGATI DISGIUNTAMENTE TUTTI I POTERI DI
ORDINARIA E STRAORDINARIA AMMINISTRAZIONE, CON LA SOLA ESCLUSIONE DEI POTERI
CHE PER LEGGE SONO RISERVATI AL CONSIGLIO DI AMMINISTRAZIONE;

* RIZZO ROBERTO
nato a TORRE DEL GRECO (NA) il 09/09/1941
codice fiscale: RZZRRT41P09L259U
firma depositata
- CONSIGLIERE   nominato con atto del 26/04/2011
presentazione il 09/05/2011
   durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013

* DE CARLINI UGO
nato a NAPOLI (NA) il 02/10/1945
codice fiscale: DCRGUO45R02F839Y
- CONSIGLIERE   nominato con atto del 26/04/2011



Prot.:CEW/40845/2011/CNA0239                                   ·  28/10/2011

presentazione il 09/05/2011
  durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013

* COCCIA NICOLA
nato a NAPOLI (NA) il 13/07/1947
codice fiscale: CCCNCL47L13F839N
firma depositata
- PRESIDENTE DEL COLLEGIO SINDACALE   nominato con atto del 26/04/2011
  durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013

* SBAILO' MAURIZIO
nato a NAPOLI (NA) il 02/05/1964
codice fiscale: SBLMRZ64E02F839N
- SINDACO EFFETTIVO   nominato con atto del 26/04/2011
presentazione il 28/07/2008
  durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Abilitazioni professionali
G.U.N.RO 31BIS DEL 21/4/1995.

* DE LUCA GIOVANGIUSEPPE
nato a NAPOLI (NA) il 18/08/1974
codice fiscale: DLCGNG74M18F839G
- SINDACO EFFETTIVO   nominato con atto del 26/04/2011
presentazione il 09/05/2011
  durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Data iscrizione: 07/08/2008

* COCCIA FRANCESCA
nata a NAPOLI (NA) il 17/10/1979
codice fiscale: CCCFNC79R57F839N
- SINDACO SUPPLENTE   nominato con atto del 26/04/2011
presentazione il 09/05/2011
  durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Data iscrizione: 07/08/2008

* CARDO VINCENZO
nato a TORRE DEL GRECO (NA) il 13/11/1976
codice fiscale: CRDVCN76S13L259X
- SINDACO SUPPLENTE   nominato con atto del 26/04/2011
  durata in carica  FINO APPROVAZIONE DEL BILANCIO al 31/12/2013
Data iscrizione: 20/05/2011

Le notizie e i dati relativi ad atti depositati prima dell'entrata in vigore del
D.P.R. 7/12/1995, n. 581, possono risultare in estratto o in forma sintetica.

Il presente certificato riporta le notizie/dati iscritti nel Registro alla data
odierna.

IMPOSTA DI BOLLO ASSOLTA IN MODO VIRTUALE. AUTORIZZAZIONE DELL'INTENDENZA DI
FINANZA DI NAPOLI NR. 38220 DEL 23.9.1980

RISCOSSI PER NR BOLLI    1    EURO    43,86
        PER DIRITTI           EURO     5,00
TOTALE                        EURO    48,86
TOTALE CON GLI IMPORTI ESPRESSI IN LIRE: 94605

SI DICHIARA INOLTRE CHE NON RISULTA ISCRITTA NEL REGISTRO DELLE IMPRESE, PER LA



Prot.:CEM/40845/2011/CNA0239                                28/10/2011

POSIZIONE ANAGRAFICA IN OGGETTO, ALCUNA PROCEDURA CONCORSUALE IN CORSO, AI
SENSI DELLA NORMATIVA VIGENTE IN MATERIA.
SI DICHIARA INOLTRE CHE NON RISULTA ISCRITTA NEL REGISTRO DELLE IMPRESE, PER LA
POSIZIONE ANAGRAFICA IN OGGETTO, ALCUNA DICHIARAZIONE DI PROCEDURA CONCORSUALE,
AI SENSI DELLA NORMATIVA VIGENTE IN MATERIA.

                        PER IL CONSERVATORE
                        (DR.SSA TEODORA FERRARA)

                        MASSIMO CANCEM

*** fine certificato ***

Prot. No 3362654                              29/08/2011


## CHAMBER OF COMMERCE INDUSTRY CRAFTSMANSHIP AND AGRICULTURE OF NAPLES
### -COMPANIES REGISTRY OFFICE-


### COMPANY'S CERTIFICATE IN THE ORDINARY SECTION

### GENERALITY OF THE COMPANY

Fiscal Code and number of registration: 02751631215
of the commercial Registry of Naples
Date of registration: 19/02/1996

Enrolled in the ordinary section                    on 19/02/1996

Enrolled with the number of Administrative Economic Repertoire 513624 on 05/10/1993

Denomination: RIZZO-BOTTIGLIERI-DE CARLINI ARMATORI SOCIETA' PER AZIONI OR BRIEFLY "RBD ARMATORI S.P.A."

Forms of business organisation:  Joint-stock limited company

Head Office:
Torre del Greco (NA) Viale Olivella, 10 Post Code 80059

Date of incorporation   20/07/1993

Duration of the Company:
Expiry date: 31/12/2050

Company's Purpose:
The purpose of the company is as follows:
Carrying out the operation activity in the maritime field through ships owned by the company and/or by third parties. The enrolment of crew as well as the purchase, the sale, the demise charter, the exchange, the manning of ships and boats of any kind with faculty of:
- Performing maritime services of any kind, also liner services, also on behalf of the state and with its participation, in particular national and international carriage;

- managing in its name or on behalf of third parties distribution system, purchase and sale of bunker;
- building vessel and demolishing wrecks;
- performing import and export transaction;
- buying and selling national and foreign naval materials;
- carrying out carriage by road services connected to the carriage by sea.

The Company may also carry out the following activity:

- purchase, sale and exchange, also partly, of immovable for civil apartments, companies and factories, for hotel and/or touristic purposes, sale and purchase of soils and country land and immovable goods and rights in general;  the management of immovable owned by the Company or by third parties, including their rental and leasing – not financial -, also in regime of joint temporarily common ownership, furnished or not furnished;

the direct and/or indirect hotel activity, catering, night clubs and any other touristic activity, including that of tour operator and organisation of meeting, seminaries, and cultural, artistic, entertaining and touristic happenings.

The company, formed with the purpose of realising new productive initiatives, may use any facility and incentives in favour of the young entrepreneurs.

Finally the company may also carry out any act necessary to actuate the company's purpose, including, as not prevailing activity and not towards the public:

- making commercial, industrial, immoveable, banking, financing and mortgage activities;
- applying for any kind of loan facility with financial institutions, banks, companies and private persons, granting the necessary real and personal securities;
- giving guarantees, approvals and real securities also in favour of third parties;
- assuming participations and interests in companies also established abroad and companies having a similar or analogues purpose;
- participating in consortium and associations of companies.

----------------------------------------------------------------------------------------------------

emblem of the company

"Rizzo-Bottiglieri-De Carlini Armatori S.p.A." or "RBD Armatori S.p.A."

## ADMINISTRATION AND MANAGEMENT

BOARD OF DIRECTORS
number of members in charge: 5
Duration: until the approval of the balance sheet

BOARD OF AUDITORS:

- Actual auditors
number of members in charge: 3
in office for 3 YEARS

- Substitute auditors
number of members in charge: 2
in office for 3 YEARS

## INFORMATION ON THE BY-LAWS

Powers in accordance with the by-laws:
A) or by a board of directors made by three up to nine members;
B) or by a sole director.
The directors, that can also be not shareholders, are in charge for three years and can be re-elected.
The administration body is vested with the widest powers for the ordinary and extraordinary administration of the company and has the faculty of doing the necessary ordinary and extraordinary acts to finalise and achieve the company's purpose, excluding any act regarding the sale of ships that shall be authorised by the shareholders' meeting.
Furthermore, the administration body is also vested with the following powers:
A) resolution of merging and de-merging in the events provided by Article 2505, 2505 bis, 2506 ter, last paragraph of the civil code;
B) the setting up and closure of secondary offices;
C) the determination of who amongst the directors has the legal representation of the company, if not decided by the meeting;
D) the reduction of the capital stock in case of withdrawal of a shareholder;
E) the adaptation of the by-laws to legislative provisions;
F) the transfer of secondary offices in other city of Italy.
The directors are not bound to comply with the prohibition of competition provided by Article 2390 of the civil code.
The president of the board of directors or the sole director has the signature and the legal representation of the company towards third parties and in legal process.
The legal representation of the company is due also to the managing directors within the limits of the delegation granted by the board of directors.
The administration body may also appoint technical directors and/or proctors, for specific acts or categories of acts deciding from time to time the powers and faculties.
The fee of the administration body and the reimbursement of the expenses if due and sustained in connection with their duty are determined by the shareholders' meeting pursuant to Article 2389 of the civil code.
If during the financial year one or more directors are missing, the remaining directors may substitute them by a resolution approved by the board of auditors, provided that the majority is also made of directors appointed by the meeting (or by the article of incorporation). The directors so appointed are in charge until the subsequent meeting. If the majority of the directors appointed by the meeting (or by the article of associations) is not in charge, those remaining in charge must call the meeting for the appointment of the missing ones.

The directors so appointed are in charge for the same period of the other in charge at the time of their appointment.

APPORTIONMENT OF THE PROFITS AND LOSSES AMONG THE SHAREHOLDERS.

Each financial year ends on 31 December of each year.
The net profit resulting from the balance sheet, deducted at least 5% (five per cent) to be used as legal reserve until the latter reaches the fifth of the capital stock, shall be apportioned proportionally to the shares' participation owned by each of the shareholders, unless otherwise approved by the meeting.

Powers connected to the duty of ACCOUNTING CONTROLLER .
The board of auditors is vested with the accounting control of the company.

Withdrawal clause

Any shareholder who did not take part in the approval regarding the resolution of the following arguments may withdraw from the company:
A) the amendment of the Clause regarding the company's purpose, when it allows a substantial change of the activity of the company;
B) the change of the company;
C) the transfer of the company's office abroad;
D) the revocation of the liquidation process;
E) the amendments to the criteria of assessment of the value of each share in case of withdrawal;
F) the amendment to the by-laws concerning the voting or participation rights;
G) the prorogation of the term;
H) the introduction or removal of commitment to the circulation of shares.
Terms and modality of exercise of right of withdrawal, criteria of calculation of the value of the shares for which the withdrawal is exercised and the procedure of liquidation are governed by Article 2437 bis-ter-quater-quinques and sexies of the civil code

PATRIMONIAL AND FINANCING INFORMATION

Capital stock in EURO
Resolved       14,500,000.00
Subscribed   14,500,000.00
Paid              14,500,000.00

Financial instruments provided in the by-laws.

4

- other financial instruments.
The company, by a resolution to be resolved by the extraordinary meeting with the majority of the votes provided for in Article 15 of the by-laws, can issue financial instruments with patrimonial rights or administrative rights, excluding the voting rights in the general meeting of the shareholders.

The holder of financial instruments has the rights to appoint an independent member of the board of auditor, by a resolution of their special meeting that is governed by the provisions of the present by-laws concerning the meeting of the shareholders.

## EXTRAORDINARY OPERATIONS

Project of amalgamation by merging of the company
- Casasole R.E. S.r.l.
(NA) REA number 711927
Fiscal Code: 04755731215
Date of the deed: 19/10/2006

Amalgamation by merging of:
- Casasole R.E. S.r.l.
Office: Torre del Greco (NA) REA number 711927
Fiscal Code: 04755731215
Date of the registration: 26/10/2006     Date of the modification: 29/12/2006
Date of the resolution: 25/10/2006      Executed with deed: 28/12/2006

Project of amalgamation by merging of the company
- Rizzo – Bottiglieri – De Carlini Shipping Company.
Legal Office: Torre del Greco
Fiscal Code: 06076391215
Date of registration: 19.01.2010
Date of the deed: 12/01/2010

Amalgamation by merging of:
- - Rizzo – Bottiglieri – De Carlini Shipping Company.
Office: Torre del Greco (NA) REA number 711927
Fiscal Code: 06076391215
Date of the registration: 29/04/2010     Date of the modification: 05/07/2010
Date of the resolution: 27/04/2010      Executed with deed: 30/06/2010

## ACTIVITY

Main activity carried out by the company: Maritime navigation

Date of the beginning of the activity: 20.03.1995

HOLDERS OF OFFICES OR TITLES

* BOTTIGLIERI GRAZIA (representative of the company)
born in Torre del Greco (NA) on 26/06/1946
fiscal code: BTTGRZ46C66L259Z
signature deposited
- President of the Board of Directors appointed on 26/04/2011
introduced on 9/05/2011
in charge until approval of the balance sheet on 31/12/2013
Powers: legal representation of the company
- Managing Director appointed on 26/04/2011
in charge until approval of the balance sheet on 31/12/2013
Powers:
To confer severally to the managing directors all the ordinary and extraordinary powers
with the only exception of those that are reserved to the board of directors by law and
- Director appointed on 26/04/2011
in charge until approval of the balance sheet on 31/12/2013

* BOTTIGLIERI ORSOLA
born in Naples on 18/10/1956
fiscal code: BTTRSL56R58F839Q
Director appointed on 26/04/2011
introduced on 9/05/2011
in charge until approval of the balance sheet on 31/12/2013
- Managing Director appointed on 26/04/2011
in charge until approval of the balance sheet on 31/12/2013
Powers:
To confer severally to the managing directors all the ordinary and extraordinary powers
with the only exception of those that are reserved to the board of directors by law and

* RIZZO GIUSEPPE MAURO
born in Naples (NA) on 15/08/1971
fiscal code: BTTRSL56R58F839Q
- Counsellor appointed on 26/04/2011
introduced on 9/05/2011
in charge until approval of the balance sheet on 31/12/2013
- Managing Director appointed on 26/04/2011
in charge until approval of the balance sheet on 31/12/2013
Powers:
To confer severally to the managing directors all the ordinary and extraordinary powers
with the only exception of those that are reserved to the board of directors by law and