1  Erich P. Wise (State Bar No. 63219)
   erichw@fdw-law.com
2  Aleksandrs E. Drumalds (State Bar No. 237101)
3  aleksd@fdw-law.com
   FLYNN, DELICH & WISE LLP
4  One World Trade Center, Suite 1800
5  Long Beach, CA 90831
   Telephone:  (562) 435-2626
6  Facsimile:  (562) 437-7555
7
8  Lawrence J. Kahn [Admitted Pro Hac Vice]
   kahn@freehill.com
9  Freehill, Hogan & Mahar, LLP
10 80 Pine Street
   New York, New York 10005-1759
11 Telephone: (212) 425-1900
12 Facsimile: (212) 425-1901
13
   Attorneys for Plaintiff
14 PIONEER FREIGHT FUTURES COMPANY LIMITED
15 (IN LIQUIDATION)

16           UNITED STATES DISTRICT COURT

17    CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

18
19 PIONEER FREIGHT FUTURES              ) Case No.:  CV 11-10313 PA (VBKx)
   COMPANY LIMITED (IN                  )
20 LIQUIDATION),                        ) **IN ADMIRALTY**   **BY FAX**
                                        )
21          Plaintiff,                  ) **RESPONSE MEMORANDUM OF**
                                        ) **LAW IN OPPOSITION TO**
22                                      ) **MOTION** TO VACATE
23      vs.                             ) **ATTACHMENT AND DISMISS**
                                        ) **ACTION**
24 MARINE TRADE, S.A. and RIZZO         )
25 BOTTIGLIERI-DE CARLINI               )
   ARMATORI, S.P.A.,                    ) Hearing Date: December 20, 2011
26                                      ) Time: 2:00 p.m.
                                        ) Judge: Hon. Victor B. Kenton
27          Defendants.                 ) Location: Courtroom 590
28                                      )

RESPONSE MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO VACATE ATTACHMENT AND DISMISS          CASE NO. CV 11-10313 PA (VBKx)
ACTION

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

**COMES NOW** Plaintiff Pioneer Freight Futures Company Limited (In Liquidation) (hereinafter, "PFF"), by and through undersigned counsel, who respectfully submits this Memorandum of Law in Opposition to the Motion by Defendant Rizzo Bottiglieri-de Carlini Armatori (hereinafter, "RBDA") to vacate the attachment, to dismiss the action as against it, and for other relief.  For the reasons set forth in Plaintiff's initial pleading, the accompanying Declaration Aleksandrs E. Drumalds, an exhibit to which contains a declaration on English law, and for those set forth below, RBDA's motion should be denied.

## I.  SUMMARY OF ARGUMENT IN RESPONSE TO MOTION

Defendant RBDA's motion challenges the Rule B attachment in only one respect – RBDA argues that the action does not support this Court's admiralty and maritime jurisdiction because, RBDA argues, the Forward Freight Agreement ("FFA") contracts at issue herein are not maritime contracts.  RBDA is incorrect, though – it has been widely held that FFA contracts are maritime contracts and that the breach of same gives rise to maritime jurisdiction.  Indeed, RBDA's own counsel has himself set forth in a Verified Complaint before another judge that FFA contracts are maritime in nature and sought and obtained a Rule B attachment in support thereof.  The dispute in this action is maritime and the attachment is proper.

RBDA's motion also seeks to dismiss the action against it under Rule 12 on the sole basis that it claims it is not the alter ego of Defendant Marine Trade, S.A. (hereinafter, "MT"), as PFF has alleged in the Verified Complaint.  In support of same, RBDA offers affidavit testimony and argues that in the face of its own testimony (which has not been subject to cross-examination), that PFF cannot establish its allegations of alter ego.  At this preliminary stage of the proceedings, however, PFF need not definitively prove its case of alter ego to the extent that would be required at trial.  Instead, PFF only needs to establish a prima facie case, and it has done so.  The allegations set forth in PFF's Verified Complaint are

–1–

1  detailed and set forth a basis for an eventual finding in favor of PFF.  While alter

2  ego is rarely easy to prove, it is well established that at the mere pleading stage –

3  before discovery has taken place – if the plaintiff has established a prima facie case

4  then the plaintiff should not be denied its day in court.

5

6  ## II.  ARGUMENT

7  **A.    The Rule B Attachment is Valid.**

8      There can be no disagreement that the burden of demonstrating that the

9  attachment should be maintained is on the plaintiff.  The point is set forth clearly in

10  the Rule, and the judicial determination of the Ninth Circuit in this regard is

11  consistent with that of the Second Circuit, and holds that to meet this burden, the

12  plaintiff must demonstrate four conditions:  (1) that the Plaintiff has a valid prima

13  facie claim against the defendant, (2) that the defendant cannot be found within the

14  district in which the attachment was sought, (3) that property of the defendant can

15  be found within the district, and (4) that there is no statutory or maritime law bar to

16  the attachment. *Equatorial Marine Fuel Management Services Pte v. MISC Berhad*,

17  591 F.3d 1208, 1210 (9th Cir. 2010), *citing Aqua Stoli Shipping Ltd. v. Gardner*

18  *Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).  Here, RBDA only challenges the

19  first condition, claiming that the FFA contracts at issue are not maritime contracts.[1]

20  RBDA, however, is incorrect.

21      Although the Ninth Circuit has yet to rule on whether or not the breach of an

22  FFA contract is a claim giving rise to admiralty and maritime jurisdiction, other

23  cases deciding the issue in New York and Louisiana district courts are instructive.

24  *See Brave Bulk Transp. v. Spot-On Shipping Ltd.*, 2007 U.S. Dist. LEXIS 81137,

25  *4-7 (S.D.N.Y. 2007) ("[w]hile initially skeptical about the saltiness of forward

26

27  [1] There can be no good faith argument with respect to the other three conditions.  RBDA is not
28  "found within the district", its property is within the district, and there is no statutory or maritime
    law bar to the attachment.

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

–2–

RESPONSE MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO VACATE ATTACHMENT AND DISMISS
ACTION                                    CASE NO. CV 11-10313 PA (VBKx)

1  freight agreements, I am now persuaded that they are sufficiently part of the
2  business of maritime commerce to confer admiralty jurisdiction"); *Flame S.A. v.*
3  *Primera Mar. (Hellas) Ltd.*, 2010 U.S. Dist. LEXIS 9830, *5-6 (S.D.N.Y. Jan. 28,
4  2010) (claims concerning the breach of FFA contracts confer admiralty jurisdiction
5  on the court); *Bulk Trading, S.A. v. Capex Eur. S.A.M.*, 2011 U.S. Dist. LEXIS
6  35059, *5-8 (E.D. La. Mar. 21, 2011) ("[b]ased on the maritime transaction
7  contemplated in the parties' FFA, the Court follows other courts in finding that the
8  FFA are sufficiently part of the business of maritime commerce to confer admiralty
9  jurisdiction" (*citing Flame, S.A.* and *Brave Bulk*)).  As discussed in *Brave Bulk*, in
10 each of the following cases the breach of FFA contracts formed the basis for Rule B
11 attachment actions, and in each case, the Court issued an order directing issuance of
12 Process of Maritime Attachment and Garnishment based on the *ex parte* application
13 of counsel for the Plaintiff: *C. Transport Panamax Ltd. v. North America*
14 *Steamships Ltd., a/k/a N.A.S.L.*, 06 CV 13178 (RLC); *Daeyang Shipping Co. Ltd. v.*
15 *Navitrans Maritime Inc.*, 04 CV 8050 (VM); *Deiulemar v. Source Link Shipping*
16 *Co., Ltd.*, 07 CV 2983 (SAS); *Deiulemar v. Spot On Shipping Ltd.*, 07 CV 3820
17 (VM); *Eurotrade Inc., Liberia v. Source Link Shipping Co. Ltd., BVI*, 07 CV 3172
18 (SAS); *Pan Oceanic Maritime Inc. v. Source Link Shipping Co. Ltd.*, 07 CIV 3089
19 (CM); *Perseveranza di Navigazione S.p.A. v. Source Link Shipping Co. Ltd.*, 07 CV
20 3091 (RPP); *Taiwan Maritime Transport Co. Ltd. v. Navitrans Maritime Inc.*, 06
21 CV 13564 (RJH); *Setsea S.p.A. v. Source Link Shipping Co. Ltd.*, 07 CV 6230
22 (DAB).  These cases are hardly alone.
23        In opposition to this weight of authority holding or otherwise finding that
24 FFA contracts give rise to admiralty jurisdiction, RBDA argues that FFA contracts
25 are not maritime because such contracts do not involve "any particular charter party,
26 vessel, cargo or voyage" [RBDA's Memorandum In Support of Motion to Vacate
27 ("RDBA's Brief"), at p. 4.]  In reliance on this point, RBDA cites only a single
28 decision from the Southern District of New York which determined admiralty

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

– 3 –

1   jurisdiction was lacking because (in part) "it did not identify or relate to a particular

2   ship". [RBDA Brief, at p. 6, *citing D'Amico Dry Ltd. v. Primera Maritime (Hellas)*

3   *Ltd.*, 2011 U.S. Dist. LEXIS 31986 (S.D.N.Y. 2011). Such reasoning, however, was

4   specifically rejected by the Ninth Circuit in *ProShipLine, Inc. v. Aspen*

5   *Infrastructures, Ltd.*, 609 F.3d 960, 967-68 (9th Cir. 2010). In that case, the Court

6   held that whether contracts are maritime in nature should be based on the Supreme

7   Court's "conceptual approach" as established in *Norfolk S. Ry. Co. v. James M.*

8   *Kirby Pty Ltd.*, 543 U.S. 14, 26 (2004), which considers that modern maritime

9   commerce "is often inseparable from some land-based obligations" (*Id.* at 25) and

10  requires only an analysis of whether the contract at issue references "maritime

11  service" or "maritime transactions" (*Id.* at 24)). *See similarly Equatorial Marine*,

12  591 F.3d 1208, 1210 (9th Cir. 2010); *Gengler v. U.S. ex rel. its Dept. of Def. &*

13  *Navy*, 453 F.Supp.2d 1217, 1225 (E.D. Cal. 2006). In reversing the district court

14  (which had determined it lacked maritime jurisdiction over such a contract because

15  it did not relate to a particular vessel or cargo), the Ninth Circuit *in ProShipLine,*

16  *Inc.* held that such a limited "spatial" approach to whether maritime jurisdiction

17  existed was contrary to the Supreme Court's holding in *Kirby*, which instead

18  demanded a "conceptual approach" which determined whether a "maritime service"

19  or "maritime transactions" were referenced in the underlying contract. *ProShipLine*,

20  609 F.3d at 967-68. Judge Koetl's decision in *D'Amico* is not only contrary to the

21  numerous decisions discussed above by other judges of the Southern District of New

22  York and of other jurisdictions, but it cannot be found to be persuasive given the

23  Ninth Circuit's holding in *ProShipLine*, which specifically rejected the reasoning set

24  forth in *D'Amico*.

25      RBDA also argues, based on *D'Amico*, that under English law the breach of

26  an FFA would not give rise to maritime jurisdiction. RBDA's argument is rooted in

27  the fact that the FFA contracts provide for the application of English law to

28  interpretation of the contracts and to disputes between the parties. While English

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

-4-

1    law may govern in such situations, though, English law is irrelevant to the question

2    of whether the United States District Court for the Central District of California has

3    admiralty subject matter jurisdiction.   The "Sales and Logistics Services

4    Agreement" concerning the appointment of a "general sales and port services agent"

5    at issue in *ProShipLine* also contained an English choice-of-law clause, but the

6    Ninth Circuit held this dispute was still based on a maritime contract under U.S.

7    law. *ProShipLine*, 609 F.3d, at 964, 967-68.  Whether this Court has admiralty and

8    maritime subject matter jurisdiction is a question of U.S. federal law.  It is self-

9    evident that English courts and English law do not determine the subject matter

10   jurisdiction of U.S. federal courts.[2]  A similar argument was raised and rejected in

11   *Pink Goose (Cayman) Ltd. v. Sunway Traders LLC*, 2008 U.S. Dist. LEXIS 82081

12   (S.D.N.Y. Oct. 17, 2008).  In that case, the Defendant moved to vacate a Rule B

13

14   [2] Contrary to any contention by Defendants, English law does not hold that a breach of an FFA is
     not a maritime claim.  The High Court in England has a number of divisions and sub-divisions,

15   and the Admiralty and Commercial Court is a sub-division of the Queen's Bench Division, and is
     itself composed of the Admiralty Court and the Commercial Court. [See Parsons Declaration,

16   Exhibit E to the Declaration of Aleksandrs E. Drumalds.] Claims in the Admiralty Court are not

17   common and are generally confined to salvage, charter party disputes, and other similar matters.
     An admiralty claim *in rem* must be brought in the Admiralty Court, however, and the types of

18   claims which can give rise to a claim *in rem* are set out in Section 20 of the Senior Courts Act

19   1981 as quoted by Ms. Hanley in her letter. Whether or not a claim falls within the Admiralty
     Court's jurisdiction has nothing to do with whether a claim falls within a general notion of a claim

20   being "maritime."  As quoted by Ms. Hanley in her opinion letter, the statute applies to
     specifically enumerated claims, none of which are dependent on whether they are "maritime"

21   claims. Thus, the issue of whether a claim is "maritime in nature" has no relevance under English

22   law because it has no impact on the parties' rights. An English lawyer may well ask, "does it fall
     within §20 of the SCA", and thus found jurisdiction in the Admiralty Court, but the test there is

23   defined entirely by the words of the statute and does not address the question of whether claims

24   listed by the statute or not listed by the statute are "maritime" for the purposes of an attachment in
     another jurisdiction to secure the claim asserted in an English court. In fact, the law of England is

25   that an English court will look to the law of the jurisdiction in which property has been seized to
     determine whether jurisdiction was properly founded. Here, that would be U.S. law. If an English

26   Court were asked to determine whether a claim for breach of contract under English law was a

27   "maritime claim" within the meaning of The United States' Supplemental Rules for Admiralty and

28   Maritime Claims, it would answer the question by reference to American law because English law
     does not distinguish between maritime claims and any other claims for any purpose.

– 5 –

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

1   attachment by arguing that security in aid of obtaining a judgment on an arbitration

2   award is not a valid *prima facie* claim in admiralty under English law, which was

3   the law of the underlying charterparty contract.   The Court rejected Defendant's

4   arguments holding:

5          It is settled law in this Circuit that an attachment sought to
6          secure an ultimate judgment confirming the award is a
       valid *prima facie* claim in admiralty. *Victrix S.S. Co. S.A.*
7       *v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir.
8       1987); *Good Challenger Navagante S.A. v.*
       *Metalexportimport*, 2006 U.S. Dist. LEXIS 97920,
9       06cv1847 (KMK), Slip Op. (S.D.N.Y. Jul. 17, 2006)
10      (maintaining attachment to enforce 1993 English
       judgment from a 1983 arbitration award). When a party's
11      primary interest in seeking the attachment is obtaining
12      security to satisfy a judgment, rather than simply to obtain
       *in personam* jurisdiction, the claim is not premature and
13      the requirements of Rule B(1) are satisfied. *Staronset*
14      *Shipping Ltd. v. North Star Nav. Inc.*, 659 F. Supp. 189,
15      191 (S.D.N.Y. 1987).

16
17  *Pink Goose*, at *4-5. *See similarly J. Lauritzen A/S v. Dashwood Shipping*, 65 F.3d

18  139, 141 (9th Cir. 1995) (*citing Polar Shipping ltd. v. Oriental Shipping Corp.*, 680

19  F.2d 627, 636-37 (9th Cir. 1982).   What matters is not whether an English Court

20  would find the dispute to be maritime, but instead whether this Court considers the

21  dispute to be maritime or not.   Given the Ninth Circuit's decision in *ProShipLine*

22  and the other substantial case law from New York and Louisiana on point, this

23  Court should conclude that the FFA contract breaches alleged do give rise to

24  admiralty jurisdiction.

25          Finally, it is worthy to note that RBDA's counsel himself has argued the

26  opposite of what he argues here – that FFA contracts support admiralty jurisdiction.

27  In *Deiulemar Compagnia di Navigazione S.p.A. a Socio Unico v. Webcor SA*,

28  *Geneve*, 09 CV 8503 (JSR) (S.D.N.Y.), for example, Mr. Chalos executed a Verified

-- 6 --

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

Complaint in which the sole basis for jurisdiction pled was admiralty (*see* paragraph 1 of the Verified Complaint), and it was also alleged that "*[t]he FFA is a maritime contract*" (*see* paragraph 5 of the Verified Complaint) (emphasis supplied). Mr. Chalos, on behalf of his client in the *Deiulemar* case, sought and obtained a Rule B attachment on the basis of an alleged breach of an FFA contract, yet now argues before this Court that the breach of such a contract is not maritime. A copy of the Verified Complaint filed by Mr. Chalos in the *Deiulemar* action is attached to the Declaration of Aleksandrs E. Drumalds ("Drumalds Decl.") as Exhibit A.

**B.      PFF'S Alter Ego Claims Have Been Sufficiently Pled.**

There is no real disagreement as to the legal standard that applies with respect to the sufficiency of PFF's pleadings. PFF is required in its pleadings to allege factual matters, and not simply conclusory allegations, that would "raise a reasonable expectation that discovery will reveal evidence" of (as here) its claim that MT and RBDA are *alter egos. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275 (S.D.N.Y. 2006), for example, the defendant whose funds were restrained in a Rule B proceeding was (as here) not the principal on the contract with the plaintiff and it argued in pertinent part that the plaintiff (a) was attempting to pierce the wrong company's corporate veil and (b) in the alternative, that the veil could not be pierced. The Court (Lynch, D.J.[3]) reviewed the pleadings made in the Verified Complaint and determined that the plaintiff's allegations were sufficient to demonstrate a valid prima facie claim, and that the evidence supplied that the moving defendant disregarded corporate form was indeed sufficient to sustain the attachment against the alleged alter ego. Similarly, in *Maersk, Inc. v. Neewra, Inc.*, 443 F.Supp.2d 519 (S.D.N.Y. 2006), when one of the defendants sought to vacate the attachment on the basis that the claim was not a valid maritime claim as against

---

[3] As he then was. Judge Lynch is now an appellate judge of the Second Circuit Court of Appeals.

RESPONSE MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO <u>VACATE ATTACHMENT AND DISMISS</u>
<u>ACTION</u>                                                    CASE NO. CV 11-10313 PA (VBKx)

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

him, arguing that he was not a principal to the contract of carriage (as RBDA argues here), the Court rejected the argument, noting that the Verified Complaint sufficiently alleged that defendant's involvement, regardless of whether he was a signatory to the contract, was sufficient to demonstrate the plaintiff's claim as prima facie valid sufficient to survive a Rule 12 application. *Id.* at 531-32.

The thrust of RBDA's motion is to dismiss the action against it on the basis of Rule 12(b)(6), the failure to state a claim upon which relief can be granted. It is well-established that such motions exist only to test the sufficiency of a pleading. *Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007).

In reviewing a pleading in the face of such a motion, the Court is compelled to determine whether a plaintiff met its obligations under Rules 8 and 9 of the Federal Rules of Civil Procedure, and an action can only be dismissed under this Rule if the action asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is simply "implausible". *Twombly*, 550 U.S. at 555, 570.

RBDA's motion does not argue that PFF's alter ego legal theory is not cognizable, and for good reason. The theory set forth by PFF of alter ego is well-recognized. *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997); *Orloff v. Allman*, 819 F.2d 908-09 (9th Cir. 1987); *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002), citing *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 (Cal. 1985) ; *Holcomb v. Pilot Freight Carriers, Inc.*, 120 B.R. 35, 40 (Bankr. M.D.N.C. 1990); *Carte Blanche (Singapore) v. Diners Club Intern.*, 758 F.Supp. 908, 918 (S.D.N.Y. 1991) (dummy or shell corporation is used to carry on the business of the principal); *Oriental Commercial and Shipping v. Rosseel, N.V.*, 702 F.Supp. 1005, 1021 (S.D.N.Y. 1998) ("if the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business of their persona capacities for purely personal rather than corporate ends then stockholders must be personally and

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

– 8 –

1   financially responsible"). Although alter ego cases are notoriously difficult to

2   prove, courts, including the Ninth Circuit, have established tests for demonstrating

3   alter ego. *Chan*, 123 F.3d at 1294; *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 859

4   (9th Cir. 1986); *Edwin K. Williams & Co. v. Edwin K. Williams & Co.-East*, 542

5   F.2d 1053, 1063 (9th Cir. 1976). Such tests would not exist but for the availability of

6   a valid legal theory of imposing liability on a party found to be an alter ego.

7       Instead, RBDA's motion argues principally that it is not MT's alter ego (and

8   hence that PFF is incorrect) and secondarily that PFF has failed to allege sufficient

9   facts to support an alter ego cause of action. RBDA's motion, however, fails to take

10  into account the proper legal standard for review on a motion to dismiss. Because

11  PFF's pleadings meet the required standard, RBDA's motion must be denied.

12      It is well-established that when a claim is challenged under Rule 12(b)(6), the

13  court construes the pleading "liberally in the pleader's favor". *Scheuer v. Rhodes*,

14  416 U.S. 232, 236 (1974). The Court must presume that all well-pleaded allegations

15  are true, must resolve all reasonable doubts and inferences in the pleader's favor,

16  and must view the pleading in the light most favorable to the non-moving party.

17  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 129 S.Ct. 788, 792 (2009);

18  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Albright v.*

19  *Oliver*, 510 U.S. 266, 267 (1994); *Scheuer*, 416 U.S. 232. A complaint fails to state

20  a claim entitling the pleader to relief it the complaint offers **only** "labels and

21  conclusions" or "naked assertions" devoid of further factual enhancement. *Ashcroft*

22  *v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009).

23      Claims are not permitted to be dismissed merely because the trial judge

24  disbelieves the allegations or feels that recovery is remote or unlikely. *Twombly*,

25  550 U.S. at 555-56; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *Neitzke*

26  *v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer*, 416 U.S. at 236.

27      In terms of what must be pled to establish a prima facie case of alter ego in a

28  maritime case, it is well-established under federal maritime law that:

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

-- 9 --

1
2
3
4
5
6

> The test for piercing the corporate veil in a maritime context [as] enunciated in *Kirno Hill* [is] the individual must have used the corporate entity to perpetrate a fraud **or** have so dominated and disregarded the corporate entity's form *that the entity primarily transacted the individual's personal business rather than its own corporate business.*

7   *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997), *citing Kirno*

8   *Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980), as reaffirmed in *Dow Chemical*

9   *Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir. 1986), and

10  *Williamson v. Recovery Limited Partnership*, 542 F.3d 43, 53 (2d Cir. 2008)

11  (emphasis supplied).   See similarly *Ost-West-Handel Bruno Bischoff GmbH v.*

12  *Project Asia Line*, 970 F. Supp. 471, 479 (E.D. Va. 1997) (addressing alter ego in a

13  Rule B case, and determining that because demonstrating that one corporation is

14  merely the alter ego of another is difficult to do through direct evidence, courts look

15  for certain indicia that strongly suggest a disregard of the corporate form, such as,

16  *e.g.*, gross undercapitalization, failure to observe corporate formalities, non-payment

17  of dividends, insolvency of the subservient company, siphoning of funds from the

18  subservient company, non-functioning officers or directors, absence of corporate

19  records, and complete control by a dominant stockholder).

20       The Verified Complaint in the instant action clearly sets forth substantial

21  factual allegations of alter ego that are specific, and supplemented with evidence.[4]

22  Those allegations are set forth below:

23

24  [4] RBDA argues that some of the evidence proffered by PFF in its Verified Complaint is hearsay,

25  but in so doing, RBDA once again fails to recognize the correct legal standard. While this issue has not yet been addressed in the context of a motion to dismiss and a Rule E(4)(f) hearing prior to

26  discovery, the Ninth Circuit and California district courts have held that the evidentiary rules do not serve to disqualify evidence that is supportive of the Plaintiff's allegations in other situations

27  where the parties have had little time to conduct discovery. *See, e.g. Mujica v. Occidental*

28  *Petroleum Corp.*, 381 F. Supp. 2d 1134, 1144 n.4 (C.D. Cal. 2005) ("Since a determination regarding dismissal on the basis of forum non conveniens should be made early in the litigation

- 10 -

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 436-2828

17.    At the time that MT entered into many of the FFAs, the principal point of contact for the company was listed as Mr. Giuseppe Rizzo ("Mr. Rizzo") who is also a Director of RBDA.  Despite the complicated technical group structure established by RBDA and MT, MT is in fact the wholly captive trading arm of RBDA and is entirely dominated and controlled by RBDA.  As such, RBDA is fully liable for the debts of MT to PFF.  In support of such allegation of alter ego, PFF alleges as follows:

    a.  Mr. Giuseppe Rizzo is, or until very recently was, a common officer and director of both companies.  Mr. Rizzo is the Chief Executive of RBDA and was the Managing Director of RBDA at the time that MT entered into the FFAs with PFF.  As set out below, Mr. Rizzo, whose contact details were at RBDA's offices in Italy (as opposed to MT's offices in Luxembourg) was the point of contact for matters concerning the majority of the subject FFAs.

    b.  Mr. Rizzo's work address, listed in connection with the subject FFAs as his contact for MT, was the same as the address for the registered office of RBDA.

and there will have been little discovery, the court should not be restricted in considering only admissible evidence."); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The court may give even inadmissible evidence some weight . . . ."); *see also JLG Enters. v. Excalibur Sires, Inc*2011 U.S. Dist. LEXIS 36222, *36-38 (E.D. Cal. 2011) ("This motion was filed early in the litigation before either party had an opportunity to pursue discovery. Further, in contrast to a summary judgment motion and similar to a motion for a preliminary injunction, JLG's motion has no potential to resolve the case on its merits. Therefore, in its discretion the Court will consider the evidence offered by both parties, despite its current inadmissibility as hearsay at this stage of the proceedings is not a relevant inquiry, so long as the evidence has sufficient indicia of trustworthiness It is respectfully submitted that news articles from respected publications and independent third-party research reports such as were attached to the Verified Complaint have the requisite indicia of trustworthiness to be considered by the Court in the context of RBDA's application.

– 11 –

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

c. With respect to the FFA contracts with PFF, Mr. Rizzo himself was listed as the principal point of contact for at least nine.  FFA contracts 007708, 70401494930, 7.504.2[5], 082531, 022899[6], 083041, 083573, 083584, and 084623 all list RBDA's principal director as MT's principal point of contact on these contracts.

d. The contractual need in the FFAs to contact MT through RBDA's Mr. Rizzo indicates that decision-making at MT was conducted through RBDA at RBDA's offices in Italy.

e. Market sources suggest that RBDA serves as guarantor of MT in the majority of MT's FFA contracts (see Infospectrum Report attached hereto as Exhibit 1).  No evidence of arm's length transactions between RBDA and MT has been provided to support these guarantees readily given by RBDA for the benefit of MT.

f. RBDA is widely viewed in the community as nothing more than RBDA's FFA trading arm.  Copies of numerous articles in the maritime press are attached hereto as Exhibit 2 which demonstrate the general public perception that MT has no independent corporate existence and instead is generally recognized in the trade as a mere instrumentality of RBDA. In further support of this, it is noted that the FFA contracts are sometimes negotiated with RBDA in the first instance, and then RBDA substitutes (through its "nomination" option) MT, presumably for the purpose of isolating liabilities under the FFAs it negotiates.

---

[5] Here, RBDA, or their fully guaranteed nominee, is listed rather than Giuseppe Rizzo personally -- however, Mr. Rizzo was Managing Director of RBDA at the time that RBDA entered into the contract.
[6] Here, Federigo Cannizaro's email address is listed underneath Giuseppe Rizzo's name, indicating that RBDA's Mr. Rizzo was the contact, though communications would actually be routed to MT.

– 12 –

g. MT does not appear to exercise independent control over its business activities. Instead, all of its business appears to be done for the sole benefit of RBDA. MT does not appear to be at liberty to perform the same FFA contracting and trading services for other entities that might be competitors of RBDA, and in fact is not known to perform FFA contracting for any entity other than RBDA, nor does MT even seem to seek out other business opportunities except those that would directly benefit RBDA.

h. There is no evidence that MT and RBDA contract with one another at arm's length.

i. MT does not appear to be sufficiently or otherwise adequately financed for the operations it conducts. The source of MT's funding appears to be RBDA or with the assistance and/or backing of RBDA.

j. FFA contract 70401494930 amply demonstrates the interchangeability of MT and RBDA. The fixture confirmation provided by the brokers for the deal shows that RBDA, "or fully guaranteed nominee" are the seller under the contract dated April 3, 2007. The point of contact for this FFA – whether for RBDA or MT – is Mr. Rizzo. This contract, though, was then re-issued with MT as the counter-party "fully guaranteed by RBDA". This begs the question why RBDA did not enter into the FFA itself instead of entering MT as its fully guaranteed nominee. The only sensible answer is that RBDA viewed MT as being an entity which was a mere shell or alter ego of RBDA, all controlled by and answerable to the same person – Mr. Rizzo – who entered MT as the performing entity under the FFA in order to place a layer of separation between MT and RBDA to help insulate RBDA from liabilities that may arise as a result of the FFAs.

– 13 –

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

k. Contract 7.504.2 provides for the same result, with RBDA or its fully guaranteed nominee entering into the contract initially, and then subsequently entering MT as the fully guaranteed nominee. Contemporaneous internal correspondence at PFF conveys the fact that RBDA had elected to have MT as its fully guaranteed nominee under this FFA.

l. RBDA made decisions that affected MT (such as nomination and reversion to RBDA) without any obvious input from MT as would be expected with companies that dealt with each other at arm's length.

m. RBDA's conduct with respect to FFA contract 19060701 is also demonstrative of the disingenuous nature of the relationship between RBDA and MT. On February 4, 2009, for example, PFF received a message from RBDA (through brokers) stating:

// we **repeat** below message for sake of good order ///
With reference to ffa contract no. 19060701 dated 19 June 2007 we hereby nominate marine trade sa as performing party.
please issue contract with the performing party as seller.
regards
rbd armatori spa

18.    The contract was thereafter reissued by the brokers with MT listed as the sellers. PFF's counsel issued a proposed guarantee to confirm that MT was RBDA's fully guaranteed nominee under this February 10, 2009 contract, and RBDA responded by reneging on its nomination of MT and declaring the nomination was not in effect because no guarantee had been provided by RBDA. In other words, MT is not free to act unless RBDA authorizes and guarantees its actions. Such statement by RBDA was not only directly contrary to its message of February 4, 2009, but is also contrary to the fact that MT invoiced PFF for amounts due – allegedly to MT – in relation to

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

– 14 –

the same contract. See Exhibit 3 attached hereto. MT could not properly invoice for monies due to it under a contract to which it was not a party. Clearly, RBDA viewed MT as an extension of itself when such circumstances suited its position, then attempted to absolve itself of liability for MT when it suited RBDA to do so.

The question before the Court, then, is whether the allegations set forth in PFF's Verified Complaint, if true, establish a plausible case of alter ego: *i.e.*, has PFF set forth sufficient factual allegations which, if proven true, could support a finding of an alter ego relationship that would render RBDA liable for a judgment against MT. In this regard, RBDA raises only one argument – that PFF's allegations are either not true or are not credible. This argument is not meritorious.

Substantial effort is made by RBDA to assert that allegations of the Verified Complaint are untrue or can be plausibly explained away. RBDA undertakes this effort by way of affidavit testimony from Mr. Rizzo, the admittedly shared director between RBDA and MT. Such efforts by RBDA, however, are of no legal effect in the context of a motion to dismiss. It is well-established under Supreme Court precedent cited above that the well-pleaded allegations of the complaint must be assumed to be true for purposes of evaluating a motion to dismiss. *See, e.g.,* *Fitzgerald*, 129 S.Ct. at 792; *Tellabs*, 551 U.S. at 322; *Twombly*, 550 U.S. at 555; *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 170-71 (2005); *Albright*, 510 U.S. at 267; *Scheuer*, 416 U.S. 232.

While it is true that RBDA's witness is offering testimony under oath, that testimony has not yet been tested through cross-examination. Accordingly, and to the extent it is offered to argue that factual allegations made in the Verified Complaint are either untrue or have plausible explanations that would not support a finding of alter ego, it should have no bearing on this Court's decision with respect to the motion. Even if the Court would be inclined to accept the version of events

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

– 15 –

1  proffered by RBDA (which it should not), well-established precedent holds that this
2  is not reason to dismiss. *Twombly*, 550 U.S. at 555-56 (holding that a claim cannot
3  be dismissed merely because the trial judge disbelieves the allegations or feels that
4  recovery is remote or unlikely); *see similarly Swierkiewicz*, 534 U.S. at 508; *Neitzke*,
5  490 U.S. at 327; *Scheuer*, 416 U.S. at 236.  It is respectfully submitted that the
6  testamentary evidence proffered by RBDA is entirely irrelevant to the subject
7  motion and that PFF should have its day in court including an opportunity to
8  proceed with its case and take discovery.

9       Alternatively, by offering material extrinsic to the pleadings, RBDA's motion
10  should be judged by a summary judgment standard, which – prior to the taking of
11  discovery – should be denied as a matter of course and also because there are plainly
12  material factual matters in dispute.  Rule 12(d).  *See also Celotex Corp. v. Catrett*,
13  477 U.S. 317, 322 (1986) (summary judgment should be granted only after the
14  nonmoving party has had an "adequate time for discovery"); *Anderson v. Liberty*
15  *Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); *Burlington Northern Santa Fe R. Co. v.*
16  *Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th
17  Cir. 2003); *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1000 (9th Cir. 2002)
18  *Advisory Committee Notes* to 2010 Amendments to Rule 56(d).

19       Indeed, Mr. Rizzo's Declaration – for all its vociferous denials and lengthy
20  exhibits – is most interesting for what it omits.  When it would be natural under the
21  circumstances for a party to voluntarily produce documents or other objects in his or
22  her possession as evidence and the party fails to do so, tradition has allowed the
23  adversary to use this failure as the basis for invoking an adverse inference. John W.
24  Strong, McCormick on Evidence, Admissions §264 at 184 (West 4th ed. 1992); *see*
25  *similarly Medical Laboratory Management Consultants v. American Broadcasting*
26  *Companies, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002); *Glover v. BIC Corp.*, 6 F.3d
27  1318, 1329 (9th Cir. 2001) ("[A] trial court…has the broad discretionary power to

28

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

– 16 –

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

1   permit a jury to draw an adverse inference from the destruction or spoliation against

2   the party or witness responsible for that behavior.")

3        Mr. Rizzo admits that he was a Director of MT during the operative time, but

4   provides no evidence of board of directors meetings of MT, of independent business

5   moves made by MT, or any other evidence with respect to MT's supposed corporate

6   independence.    As a Director of MT, Mr. Rizzo had or should have had

7   documentation from MT that would have supported its independent existence, but

8   he has produced not a single sheet of paper in this regard.  Indeed, whether RBDA

9   follows corporate formalities is not the full question here – it is equally important

10  whether MT follows corporate formalities, and Mr. Rizzo, who was MT's Director

11  at the relevant period, is noticeably silent as to this.

12       It should be noted that Rizzo owns the European trademark for MT, and has

13  done so since 2005, and the trademark is still active. [Please see Drumalds Decl.,

14  Exhibit D, at p. 3.]  Also, although Mr. Rizzo claims that he was "asked" to join

15  MT, he fails to say who it was who asked him to do so.  Certainly if the party asking

16  him to do so was entirely independent of and had no ties to RBDA, the same would

17  have been worth mentioning in opposition.  Mr. Rizzo also does not say who MT's

18  employees were (or if there were any).  Again, since there is no consolidation of

19  subsidiary accounts that has been provided, where do the corporate guarantees that

20  RBDA issued in favor of MT appear on the books?  Moreover, and although Mr.

21  Rizzo's Declaration states that RBDA is a family owned and run business, its

22  accounts suggest that it is in fact owned by Luxdynamic, a Luxembourg-based

23  offshore holding company. The directors of Luxdynamic at the operative time were

24  the      same      as      the      directors      of      MT.      Please      see

25  http://www.etat.lu/memorial/memorial/2008/C/Pdf/c0561063.pdf (at p. 13), and

26  compare with the Infospectrum Report attached as Exhibit 1 to the Original Verified

27  Complaint.  Accordingly, Mr. Rizzo's denials about overlapping directors rings

28  false.

– 17 –

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

1    MT was likewise (until it recently changed domiciles to the Marshal Islands)

2  a Luxembourg offshore company.  MT's address in Luxembourg was 7 Val Sainte

3  Croix, which was the address of a company called Luxembourg International

4  Consulting (or Interconsult), a company providing domiciliation services. It is

5  almost certainly not MT's actual trading address.  The motion removing MT from

6  the register in Luxembourg indicated that Fediken, a Uruguayan registered

7  company, was 100% shareholder of MT at this time.  Fediken's address in Uruguay

8  was Canelones 1090 Montevideo, which is the address of a law firm, Estudio Sole-

9  Romeo (see: http://estudiosole.com/), so Fediken also appears to be an offshore

10  company.  The sole director of Fediken (unnamed) is there represented by Vincenzo

11  Ussani    D'Escobar,    an    Italian    attorney    from    Rome    (see:

12  http://studiolegaleussani.com/) who also became a director of MT when Mr. Rizzo

13  resigned in 2008 and who signed the MT registration papers for the change of

14  domicile of MT to the Marshall Islands.  Attorney Escobar appears to have links to

15  both     RBDA     and     Mr.     Rizzo     —     see

16  http://archivio.denaro.it/VisArticolo.aspx/VisArticolo.aspx?IdArt=430761&KeyW=

17  and ftp://ftpird.wipo.int/wipo/madrid/notif/hr/PDF/n0745bhr.pdf (the RBDA link to

18  Escobar appears at p. 98).   Additionally, RBDA and MT have the same Italian

19  lawyers for litigation matters – Stefano Castaldo at Studio Legale Castaldo.

20  Moreover, a name that seems to crop up quite frequently with regard to Interconsult

21  is Federigo Cannizzaro – he, Jean-Marc Debaty (who was also a director of MT),

22  and Alexis Kamarowsky all feature regularly in Luxembourg records relating to

23  offshore off-the-shelf companies and appear to be directors of Interconsult, with Mr.

24  Kamarowsky owning the company.  The Uruguayan consulate in Luxembourg is

25  located at the very same address, and Mr. Kamrowsky is the Uruguayan Consul in

26  Luxembourg.  See http://www.embassypages.com/missions/embassy14298/.  With

27  regard to Mr. Cannizzaro, he was a director of Marine Trade, and also a director of

28  Luxdynamic SA, the company said to be RBDA's parent in the documents attached

– 18 –

to Mr. Rizzo's declaration. Mr. Cannizzaro's address is given as the very same 7 Val Sainte Croix Luxembourg, but Luxdynamic is based at 9-11 Rue Goethe Luxembourg, which appears to be the address of a number of offshore banks and funds. In all, all the structures the two companies have put in place lead back to the same individuals and similar off- the-shelf/offshore corporate structures.

It is well-established that at the pleading stage, the plaintiff is not required to prove its case. *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 526 (2d Cir. 2001). Instead, the plaintiff is only required to show that its allegations "possess enough heft" to establish an entitlement to relief, nudging the claim "across the line from conceivable to plausible". *Twombly*, 550 U.S. at 557, n.5, 570.

In particular with respect to motions to dismiss alter ego causes of action, courts often hold that "evaluating alter ego liability requires a fact-specific inquiry that courts delay until summary judgment to decide." *RaceRedi Motorsports, LLC v. Dart Machinery*, 640 F.Supp.2d 660 (D.Md. 2009); *see similarly Sullivan v. General Helicopters, Int'l*, 564 F.Supp.2d 496, 502 n.6 ( "As a general matter, the determination of alter ego liability 'is a fact-specific inquiry that courts often wait until summary judgment to decide.'") *quoting In re American Honda Motor Co. Dealerships Lit.*, 941 F.Supp. 528, 551 (D.Md. 1996).

Here, PFF's allegations show not only a common director in Mr. Rizzo, but also that RBDA actually or effectively conducted the FFA negotiations then substituted MT as RBDA's "fully guaranteed nominee". Indeed, the market perception, as set forth in the news articles and in the Infospectrum Report, is that RBDA's principals "*conduct some trading activity through this company, and they ultimately control Marine Trade*". Infospectrum Report, attached as Ex. 1 to the Verified Complaint, at p. 3. Indeed, FFA contract no. 70401494930 shows that RBDA or its "fully guaranteed nominee" is the seller of the contract, yet the point of contact – whether under RBDA or MT – is Mr. Rizzo. RBDA then re-issued the

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

– 19 –

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

1   contract with MT as the counter-party fully guaranteed by MT.  This begs the

2   question – why did RBDA not enter the FFA itself instead of entering MT as its

3   fully guaranteed nominee?  The only sensible answer is that RBDA viewed MT as

4   being an entity which was a mere shell or alter ego of RBDA, all under the control

5   of one individual, Mr. Rizzo.  FFA contract no. 7.504.2 is another example that

6   provides the same result – RBDA "or its fully guaranteed nominee" entered into the

7   contract initially, then entered MT as the substituted counter-party. [Please see

8   correspondence attached to the Declaration of Aleksandrs E. Drumalds as Exhibit

9   B.]  In fact, it appears that all of MT's positions are guaranteed by RBDA.  See

10  Infospectrum Report attached as Exhibit 1 to the Verified Complaint, at pp. 5-6,

11  stating that "*Marine Trade acts as FFA arm of RBD[A]*" and assessing based on the

12  evidence available that "*numerous market sources suggest that [RBDA] principals*

13  *are behind this company and the fact that the latter provides guarantees for Marine*

14  *Trade suggests that the two companies have links*".  Likewise, the substitution of

15  MT for RBDA, followed by RBDA's pulling of MT as the counter-party set forth in

16  paragraphs 17(m) and 18 of the Verified Complaint which was followed by MT's

17  invoicing (for itself) when RBDA was the counter-party of record (per RBDA's

18  removal of MT) demonstrates the complete control RBDA exercised over MT.

19  [Please see the attached invoicing documents attached to the Declaration of

20  Aleksandrs E. Drumalds as Exhibit C.]  Notably, Mr. Rizzo's declaration does not

21  deny any of this.

22      PFF's Verified Complaint sets forth a prima facie case of alter ego in which it

23  is alleged with specificity that RBDA dominated and controlled MT.  Mr. Rizzo's

24  denials only set up a question as to which party is correct as to the ultimate issue for

25  trial in this action.  At this stage of the proceedings – before any discovery has taken

26  place – this Court, even if it was inclined to side with Mr. Rizzo (which it should

27  not), is not permitted to dismiss the case.  Instead, it must find that a prima facie

28

– 20 –

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

1  case has been pled and accordingly the parties should be directed to proceed along

2  the normal course of litigation in such matters.

3      The way in which to test whether a pleading has been set forth with sufficient

4  particularity is to determine whether the defendant is unable "to commence an

5  investigation of the facts and frame a responsive pleading". *See Hillblom v. County*

6  *of Fresno*, 539 F.Supp.2d 1192, 1202 (E.D. Cal. 2008); *Taurus IP, LLC v. Ford*

7  *Motor Co.*, 539 F.Supp.2d 1122, 1125-27 (W.D. Wis. 2008).  Indeed, in *Wajilam*,

8  the Court held with respect to a similar argument that "[defendant] can hardly argue

9  that it has been unable to commence an investigation of the facts and frame a

10  responsive pleading, because it has already done both." *Wajilam*, 475 F.Supp.2d at

11  282.  Clearly, RBDA has already commenced an investigation of the facts, as amply

12  set forth in Mr. Rizzo's Declaration and its numerous exhibits.  To the extent,

13  however, that the Court should determine that the pleadings are in some way

14  deficient, the remedy at this juncture is not vacature of the attachment or dismissal

15  of the action, but rather that PFF must be given an opportunity to amend its

16  pleadings to add sufficient detail to satisfy the Court and to meet the objections of

17  RBDA.  *Transfield ER Cape v. B&L Transoil (Holdings) Ltd.*, 2009 WL 1809520

18  (S.D.N.Y. Feb. 4, 2009); *T&O Shipping, Ltd. v. Source Link Co.*, 2006 WL

19  3513638, at *8-9 (S.D.N.Y. Dec. 6, 2006) (noting that under Fed. R. Civ. P. 15(a),

20  "[a] party may amend the party's pleading once as a matter of course at any time

21  before a responsive pleading is served", but ultimately vacating the attachment

22  because the plaintiff had engaged in an extrajudicial and unauthorized attachment by

23  restraining funds of a party not indicated in the attachment order or the process).

24  Dismissal for insufficient pleading should only occur if the plaintiff is unwilling or

25  unable to amend its pleadings to add the requisite detail,[7] which of course is not the

26  case here – PFF respectfully requests that if the Court is to find that the pleadings

27

28

---

[7] *T&O*, 2006 WL 3513638, *8-9.

– 21 –

1   are in any way deficient, that PFF be permitted the opportunity to amend the

2   pleadings.

3        The question before this Court on the alter ego question is not whether PFF

4   has definitively established domination and control at this stage, but rather whether

5   PFF has presented enough evidence to convince the court, prima facie, that there are

6   reasonable grounds for piercing the corporate veil such that the action should be

7   allowed to continue.   *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415

8   F.Supp.2d 318, 321 (S.D.N.Y. 2006); *Sea-Terminals, Inc. v. Indep. Container Line*

9   *Ltd.*, 1990 A.M.C. 776, 779 (D. Del. Aug. 16, 1989) (holding that the issue of

10   whether the defendant company is totally separate and unrelated from the company

11   directly liable to the plaintiff should not be decided "until the facts are fully flushed

12   out after discovery"). The matters alleged by PFF herein satisfy PFF's burden. The

13   motion should be denied and the matter should be permitted to progress.

**C.   The Additional Relief Sought Should Also Be Denied.**

14        RBDA also argues that the attachment was wrongful and that as a result it

15   should be entitled to damages including legal fees. RBDA offers no supporting law

16   for its request and cannot do so because the attachment was in no way "wrongful".

17   For RBDA to demonstrate that the attachment was wrongful, it must present

18   evidence of bad faith, and RBDA has failed to establish any basis for finding that

19   there was any bad faith. *See Frontera Fruit Co., Inc. v. Dowling*, 91 F.2d 293, 297

20   (5th Cir. 1937); *see also* Thomas J. Schoenbaum, Admiralty & Maritime Law, §21-5

21   at 423-24 (4th ed. 2004), *citing inter alia Central Oil Co. v. M/V LAMMA-FOREST*,

22   821 F.2d 48 (1st Cir. 1987). RBDA's application does not support any finding of

23   bad faith in the attachment, and there was no bad faith in the attachment of the

24   ADELE MARINA RIZZO. The additional relief sought by RBDA should

25   accordingly be denied.

26   

27   ///

28   ///

–22–

CASE NO. CV 11-10313 PA (VBKx)

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

## III.  CONCLUSION

For all the foregoing reasons, and for those set forth in PFF's initial pleadings and the accompanying Declaration, RBDA's motion pursuant to Rule E(4)(f) to vacate the attachment and pursuant to Rule 12 to dismiss the action should be denied.

Dated: December 20, 2011

Respectfully submitted,

FLYNN, DELICH & WISE LLP

By: _Aleksandrs E. Drumalds_

Erich P. Wise
Aleksandrs E. Drumalds
Attorneys for Plaintiff
PIONEER FREIGHT FUTURES
COMPANY LIMITED (IN LIQUIDATION)

-and-

By: _Lawrence J. Kahn_

Lawrence J. Kahn
(*admitted pro hac vice*)
Freehill, Hogan & Mahar, LLP

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

— 23 —