Erich P. Wise (State Bar No. 63219)
erichw@fdw-law.com
Aleksandrs E. Drumalds (State Bar No. 237101)
aleksd@fdw-law.com
FLYNN, DELICH & WISE LLP
One World Trade Center, Suite 1800
Long Beach, CA 90831-1800
Telephone:  (562) 435-2626
Facsimile:   (562) 437-7555

Lawrence J. Kahn (Admitted Pro Hac Vice)
kahn@freehill.com
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005-1759
Telephone:  (212) 425-1900
Facsimile:   (212) 425-1901

Attorneys for Plaintiff
PIONEER FREIGHT FUTURES COMPANY LIMITED
(IN LIQUIDATION)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| PIONEER FREIGHT FUTURES COMPANY LIMITED (IN LIQUIDATION), <br><br> Plaintiff/Appellant, <br><br> vs. <br><br> MARINE TRADE, S.A. and RIZZO BOTTIGLIERI-DE CARLINI ARMATORI, S.P.A., <br><br> Defendants/Appellees. | No. _____ <br><br> Dist. Case No: 11-CV-10313-PA (VBKx) <br><br> **IN ADMIRALTY** <br><br> **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |

1. Notice is hereby given that Pioneer Freight Futures Company Limited, the sole plaintiff in the above-named district court case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from an Order of Magistrate Judge Victor B. Kenton entered in this action on the December 20, 2011, which vacated the attachment of property, namely the vessel M/T ADELE MARINA RIZZO. A true and correct copy of the Magistrate's Order, together with the District Judge's affirmance of that Order, is attached hereto as Exhibit 1.

Dated: December 22, 2011        Respectfully submitted,

                                                                    FLYNN, DELICH & WISE LLP

                                      By:   /s/ Aleksandrs E. Drumalds
                                                Erich P. Wise
                                                Aleksandrs E. Drumalds
                                                Attorneys for Plaintiff
                                                PIONEER FREIGHT FUTURES
                                                COMPANY  LIMITED (IN LIQUIDATION)

                                                -and-

                                                Lawrence J. Kahn
                                                (*admitted pro hac vice*)
                                                FREEHILL, HOGAN & MAHAR, LLP

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
ONE WORLD TRADE CENTER, SUITE 1800
LONG BEACH, CALIFORNIA 90831-1800
(562) 435-2626

# Exhibit 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313-PA (VBKx) | | Date | December 20, 2011 |
|---|---|---|---|---|
| Title | Pioneer Freight Futures Company Limited v. Marine Trade S. A., et al. | | | |

| Present: The Honorable | Victor B. Kenton, United States Magistrate Judge | |
|---|---|---|
| La'Ree Trepagnier | Sheri Kleeger | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Aleksandrs E. Drumalds<br>Erich P. Wise<br>Lawrence J. Kahn | | George M. Chalos<br>Theodore H. Adkinson |

**Proceedings:**      **AMENDED FINAL DECISION GRANTING MOTION TO VACATE ATTACHMENT ORDER AND WARRANT OF ARREST**

A hearing was heard on December 20, 2011. The Court allowed argument.

The Court has read and reviewed the following documents referenced by their docket numbers: "[1] Verified Complaint;" "[2] 21 Day Summons Issued re Complaint;" [4] "Ex Parte Application for an Order Agent(s) for Service of Special Process on Garnishee(s);" [6] Ex Parte Application for Appointment of National Maritime Services as the Substitute Custodian in Place of U.S. Marshal Service;" [8] "Declaration of Bill O'Dell of National Maritime Services in Support of Ex Parte Application for Appointment of Substitute Custodian National Maritime Services in Place of U.S. Marshals Service;" [9] "Affidavit by Affiant Aleksandrs E. Drumalds Pursuant to Supplemental Admiralty Rule B;" [10] "Declaration of Mark Richard Byers in Support of Plaintiff's Original Verified Complaint re Complaint;" [11] "Certification and Notice of Interested Parties;" [12] "Application for Attorney Lawrence J. Kahn to Appear Pro Hac Vice;" [14] Ex Parte Application for Order Authorizing Issuance of Process of Maritime Attachment and Garnishment Pursuant to Admiralty Rule B;" [16] "Supplemental Memorandum in Support of Ex Parte Application for Order Authorizing Issuance of Process of Maritime Attachment and Garnishment Pursuant to Admiralty Rule B," and the following additional documents filed with the Court on December 16, 2011:

     (1) "Notice of Motion to Vacate Attachment Order and dismiss Verified Complaint; "
     (2) "Declaration of George M. Chalos (and Exhibits);"
     (3) "Memorandum of Points and Authorities in Support of ... Motion to Vacate Attachment;"
     (4) "Declaration of Giuseppe Mauro Rizzo in Support of ... Motion to Vacate Attachment."

The Court also reviewed all documents filed by Plaintiff on December 20, 2011, in opposition to the Motion to Vacate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313-PA (VBKx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Company Limited v. Marine Trade S. A., et al. | | |

### BACKGROUND

On December 14, 2011, Plaintiff Pioneer Freight Futures Company Limited (in Liquidation) ("Pioneer") filed a Verified Complaint against Marine Trade S. A. and Rizzo Bottiglieri-De Carlini Armatori S.P.A. (hereinafter "MT" and "RBDA"). Based upon the verified complaint Pioneer sought a Rule B attachment of the vessel M/T Adele Marina Rizzo. Following review of the documents filed by Pioneer ex parte, this Court on December 14, 2011 granted Pioneer's ex parte application, and issued related Orders authorizing issuance of process of maritime attachment and garnishment.

On December 16, 2011, RBDA filed its own ex parte application seeking an expedited emergency hearing on its Motion to Vacate the Attachment Order and dismiss the Verified Complaint. For the reasons set forth below, the Court intends to vacate the Attachment Order. This Court does not have jurisdiction to dismiss the Verified Complaint. This must addressed by the District Judge.

The hearing conducted by this Court at 2:00 p.m. on December 20, 2011 was calendared pursuant to Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure.

According to the Verified Complaint, Pioneer is a foreign business entity with an address in the British Virgin Islands, and is currently in liquidation. MT was a foreign business entity organized and existing under the laws of Luxumbourg, but subsequently became a foreign business entity organized and existing under the law of the Marshall Islands. RBDA was a foreign business entity organized and existing under the laws of Italy.

The dispute described in the Verified Complaint alleges that Pioneer traded Forward Freight Agreements ("FFA"), "which are maritime contacts that enable contracting parties to hedge on the price of ocean freight over future contractual periods." (Verified Complaint, ¶ 5.) Pioneer entered into 14 separate FFAs with MT between May 2007 and September 19, 2008. (Id., ¶ 6.) According to the Verified Complaint, on December 14, 2009, Pioneer began liquidation proceedings which are alleged to be a default under the terms of the applicable FFAs. (Id., ¶¶ 8, 9.) Based upon the early termination of the FFAs as of December 14, 2009, Pioneer alleges that it is due approximately $93,000,000.00 in damages. (Id, ¶ 11.) As noted in the Verified Complaint,

> "Under the terms of the FFAs, [Pioneer's] dispute with MT is subject to English law and the exclusive jurisdiction of the High Court of Justice in England." (Id., ¶ 15.)

The Verified Complaint then makes alter ego allegations (Id,, ¶¶ 17, et seq.). Pioneer's essential allegation is that, "MT is in fact the wholly captive trading arm of RBDA and is entirely dominated and controlled by RBDA. As such, RBDA is fully liable for the debts of MT." (Id, ¶ 17.)

Based upon the documents filed by Pioneer on December 14, 2011, this Court granted the maritime attachment. For the reasons set forth below, the Court believes that the attachment was improvidently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313-PA (VBKx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Company Limited v. Marine Trade S. A., et al. | | |

issued, and must be vacated.

RBDA makes the persuasive argument that under English law[1] the FFAs at issue are not maritime contracts, and that Pioneer's underlying claims do not sound in admiralty or otherwise give rise to a maritime claim within the meaning of Rule B. RBDA argues that FFAs are "derivative financial contracts." (Memorandum at 4, citing D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd., 2001 U.S. Dist. Lexis 31986, at *3-4 (S.D. N.Y,. March 28, 2011), and that FFAs are essentially similar to financial instruments which are utilized in other commodity futures markets. Citing D'Amico, RBDA argues that an FFA is a contract in which the parties agree to "pay the difference between a price agreed today and the future price of moving a product line from one location to another, or for the future price of hiring a ship over a period of time." (D'Amico, 2011 U.S. Dist Lexis 31986, at *4.)

Although D'Amico Dry Ltd. is an opinion of a District Court, and not of an appellate court, after careful review of that decision, this Court finds it to be highly persuasive, in substantial part because the FFAs at issue in this case, as in the D'Amico Dry Ltd. case, are governed by English law. In D'Amico, the District Court's review of applicable English law led it to conclude that a contract for marine insurance is not sufficiently connected to a contract for carriage of goods in or use of a ship, a requirement under English law to establish maritime jurisdiction. The District Court reasoned that, "If a contract for maritime insurance is not sufficiently related to the carriage of goods or the use of ship to come within Section 20, it is plain that an FFA would not do so. Moreover, the FFA between the parties ... did not identify or relate to a particular ship." (Id, at *3.)

Under American admiralty and maritime law, 28 U.S.C. § 1333(1) provides jurisdiction to the District Courts in "any civil case of admiralty or maritime jurisdiction, ..." As directed by the United States Supreme Court in Norfolk Southern Ry. Co. v. Kirby, 532 U.S. 14, 24 (2004), the Court must look to the subject matter of the contract to determine whether admiralty jurisdiction is properly invoked. As the Ninth Circuit has interpreted Norfolk,

> "The Court held that a 'conceptual approach' was needed because modern maritime commerce 'is often inseparable from some land-based obligations." (Pro Ship Line, Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960 (9th Cir. 2010), quoting Norfolk, 543 U.S. at 25.)

But, whether or not American law would treat these FFAs as sufficient to invoke American maritime jurisdiction is not the issue. As Judge Koeltl noted in D'Amico, while maritime insurance contracts do not invoke English maritime law (see D'Amico, 2011 WL 1239861 at *3, citing The Sandrina [1985], A.C. 255 H.L. 271, "By contrast, claims arising from similar insurance contracts would be within the admiralty jurisdiction of federal courts in the United States." (Id. at fn. 2.)

The Court is sufficiently persuaded that the governing law of the FFAs in this case, which is English law,

---

[1] Sections 20(1)(a) and 20(2)(h) of the Senior Courts Act of 1981 (see also Opinion of Colleen Hanley, Ex. A to Chalos Declaration).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313-PA (VBKx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Company Limited v. Marine Trade S. A., et al. | | |

clearly provides that FFAs such as this are not maritime in nature. (See Opinion of Colleen Hanley, dated 16 December 2011, attached as Exhibit A to Chalos Declaration.)  In a nutshell, these FFAs are commodity contracts, not maritime contracts.  There is no relationship whatsoever between an FFA and an agreement which would relate to the carriage of goods in a ship or the use or hire of a ship.  Indeed, according to the Verified Complaint, FFAs are defined as "maritime contracts that enable contracting parties to hedge on the price of ocean freight over future contractual periods." (Id, at ¶ 5.)  The fact that Plaintiff labels these contracts maritime contracts does not control the issue.  Rather, the Court must here apply the governing law of England.

The Court's determination that admiralty jurisdiction does not exist here would, in and of itself, be sufficient to grant RBDA's motion.  But the Court will also address the alter ego claim raised by Pioneer, because if the FFAs are to be considered maritime contracts sufficient to invoke admiralty jurisdiction, then an alter ego finding would be the only underpinning by which Pioneer could proceed against RBDA.  But again, the new evidence provided to the Court, specifically the information set forth in the Declaration of Mr. Rizzo, is sufficient to answer and defeat Pioneer's alter ego claim for purposes of this attachment proceeding.  It is Pioneer's burden, in order to persuade the Court to disregard corporate separateness, that the controlling corporate entity must exercise total domination of the subservient corporation.  See Chan v. Society Expeditions, 123 F.3d 1287, 1294 (9th Cir. 1997).  The Court's review of both the Rizzo Declaration, and the documentation provided by Pioneer in support of its attachment claim, lead it to the conclusion that the alter ego claim has not been established.  The Rizzo Declaration establishes, inter alia, the following: that at all relevant times, RBDA has been the registered Owner and technical and commercial manager of the vessel M/T Adele Marina Rizzo; that vessel has never been owned, operated or managed by MT; RBDA and MT are independently financed and operated; none of RBDA's shareholders were ever shareholders, officers, directors or in any way connected with MT; no RBDA employees have ever been employees of MT; Mr. Rizzo had brief and limited personal involvement as a consulting director for MT from 2005 until 2008, but otherwise, there has been no overlap between RBDA and MT; RBDA maintains its own books and records and files its own financial statements and tax returns, none of which identify or reference the operations or finances of MT; RBDA observes all corporate formalities and formal legal requirements concerning its corporate activities and holds regular meetings of its board of directors; and, MT's business has never been discussed during any RBDA board of directors meetings.

Counsel for both parties, during argument, conceded that the level of proof to establish alter ego, at this attachment stage, is not clearly or uniformally established.  Certainly, Plaintiff made out a prima facia case in its Ex Parte Application filed on December 14th; however, assuming even that probable cause constitutes the applicable standard at this stage, Plaintiff has not established to that level of proof its alter ego allegations.

Therefore, even if the Court were to conclude that FFAs are maritime contracts and thus properly invoke the maritime jurisdiction of this Court, the insufficient alter ego evidence presented by Pioneer, and RBDA's countervailing evidence, would defeat the attachment.

For the foregoing reasons, the Court's Decision is to VACATE the attachment, the warrant of arrest and all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313-PA (VBKx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Company Limited v. Marine Trade S. A., et al. | | |

implementing Orders issued on December 14th.

This Order will be STAYED until December 22, 2011 at 3:00 p.m. If, by that time, either the District Court or an Appellate Court has not issued a further stay, then this stay will automatically dissolve.

**IT IS SO ORDERED**.

|  | 2 | : | 20 |
|---|---|---|---|
| Initials of Preparer | | lmh | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313 PA (VBKx) | | Date | December 22, 2011 |
|---|---|---|---|---|
| Title | Pioneer Freight Futures Co. v. Marine Trade, S.A., et al. | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Paul Songco | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is an Ex Parte Application for Review of Magistrate's Order Vacating Attachment filed by plaintiff Pioneer Freight Futures Co. Ltd (In Liquidation) ("Pioneer"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

According to Pioneer's Verified Complaint, it entered into a series of Forward Freight Agreements ("FFAs") with defendant Marine Trade, S.A. ("MT"), which was initially organized under the laws of Luxembourg but is now a citizen of the Marshall Islands, in 2007 and 2008. Pioneer was a foreign business entity with an address in the British Virgin Islands. In December 2009, Pioneer instituted liquidation proceedings. Pioneer alleges that its institution of liquidation proceedings was an event of default under the FFAs that has resulted in MT being liable to Pioneer for $93,572,124.15 plus interest and assorted other costs of approximately $7 million. To collect on this debt, Pioneer commenced this action on December 14, 2011.

Pioneer alleges that the Court possesses admiralty jurisdiction over this matter. Accompanying the Complaint was an Ex Parte Application for a Rule B attachment of the vessel M/T Adele Marina Rizzo. The M/T Adele Marina Rizzo is owned by defendant Rizzo Bottiglieri-De Carlini Armatori, S.p.A. ("RBDA"). RBDA is an Italian company. Pioneer alleges that RBDA, although not a party to the FFAs, is liable as the alter ego of MT. Specifically, the Complaint alleges that "MT is in fact the wholly captive trading arm of RBDA and is entirely dominated and controlled by RBDA. As such, RBDA is fully liable for the debts of MT to [Pioneer]." (Complaint 6:25-27.)

Pioneer sought its Rule B attachment of the M/T Adele Marina Rizzo by filing an under seal Ex Parte Application without notice to defendants. The Magistrate Judge to whom the Ex Parte was referred granted the attachment order on December 14, 2011 while the vessel was docked in the Port of Long Beach. As a result of the issuance of the attachment order, the M/T Adele Marina Rizzo has been unable to leave the Central District. On December 16, 2011, RBDA filed an Ex Parte Application to Vacate the Attachment Order. Pioneer filed an Opposition to the Ex Parte Application to Vacate and the assigned Magistrate Judge conducted a hearing on December 20, 2011. Following the hearing, the Magistrate Judge issued an order granting the Ex Parte Application and vacating the attachment order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313 PA (VBKx) | Date | December 22, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Co. v. Marine Trade, S.A., et al. | | |

In vacating the attachment order, the Magistrate Judge concluded that he had "improvidently" issued the attachment order. Specifically, the Magistrate Judge determined that despite Pioneer's invocation of the Court's admiralty jurisdiction, the parties' dispute is not in fact maritime in nature because the FFAs contain choice of law provisions requiring application of English law and, under English law, a dispute concerning FFAs would not trigger an English court's admiralty jurisdiction. The Magistrate Judge further concluded that Pioneer had failed to sufficiently establish that RBDA is MT's alter ego. The Magistrate Judge stayed his order until December 22, 2011 at 3:00 p.m. to allow Pioneer to seek appellate review of the order vacating the attachment order.

Pioneer then filed the instant Ex Parte Application for Review of the Magistrate's Order with this Court on December 21, 2011. RBDA filed an Opposition to the Ex Parte Application on December 22, 2011. In its Ex Parte Application for Review, Pioneer contends that the Magistrate Judge erred by concluding that the Complaint does not arise under the Court's admiralty jurisdiction. Pioneer further asserts that the Magistrate Judge applied the incorrect legal standard in determining that Pioneer had not met its burden to establish RBDA's alter ego liability for MT's alleged debts. Finally, Pioneer claims that the Magistrate Judge exceeded his authority by limiting the stay to two days rather than the fourteen-day automatic stay mandated by Federal Rule of Civil Procedure 62(a).

As an initial matter, the Court notes that Pioneer's Ex Parte Application fails to satisfy the requirements for a valid Ex Parte Application. Specifically, under Local Rule 7-19.1, an attorney making an ex parte application has a duty to give notice by making reasonable good faith efforts to orally advise counsel for the other parties, if known, of the proposed ex parte application, and "to advise the Court in writing of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application or has requested to be present when the application is presented to the Court." Here, Pioneer did not notify the Court in writing of its efforts to notify opposing counsel of the Ex Parte Application or if RBDA intended to file an Opposition. Additionally, the Ex Parte Application was not accompanied by a proof of service as required by Local Rule 5-3. These violations of the Local Rules are themselves sufficient to deny Pioneer's Ex Parte Application. (See Standing Order 6:9-11 ("Applications which fail to conform with Local Rules 7-19 and 7-19.1, including a statement of opposing counsel's position, will not be considered.").)

Despite these violations of the Local Rules, the Court will address the merits of Pioneer's Ex Parte Application for Review. This Court affirms the Magistrate Judge's order vacating the attachment. A magistrate judge's decision on a nondispositive matter "is entitled to great deference by the district court." U.S. v. Abonce-Barrera, 257 F.3d 959, 969 (9th Cir. 2001). Indeed, a district court will only reverse or modify a magistrate judge's ruling on a nondispositive pretrial matter if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 623 (1993) (internal quotation marks omitted); see also Sec. Farms v. Intern. Brotherhood. of Teamsters, 124 F.3d 999, 1014 (9th Cir. 1997) (citation omitted); Federal Deposit Ins. Corp. v. Fidelity & Deposit Co. of Maryland, 196 F.R.D. 375, 378 (S.D. Cal. 2000). A decision is "contrary to law" if it applies an

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313 PA (VBKx) | Date | December 22, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Co. v. Marine Trade, S.A., et al. | | |

incorrect legal standard or fails to consider an element of the applicable standard. See Hunt v. National Broadcasting Co., 872 F.2d 289, 292 (9th Cir. 1989) (such failure constitutes an "abuse of discretion"). The "contrary to law" standard permits independent review of purely legal determinations made by the magistrate judge. Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992); Federal Deposit Ins. Corp, 196 F.R.D. at 378. However, the reviewing court may not simply substitute its judgment for that of the deciding court. Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).

The Magistrate Judge's conclusion that Pioneer failed to sufficiently establish RBDA's alter ego liability for MT's potential liabilities is not clearly erroneous or contrary to law. As the Magistrate Judge's order indicated, the plaintiff's burden of proof for determining alter ego liability in opposition to a Motion to Vacate Attachment under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions is not clearly or uniformly established. See OS Shipping Co. v. Global Maritime Trust, No. 11-CV-377-BR, 2011 WL 1750449 at *5 (D. Or. May 6, 2011) ("Although there does not appear to be any binding precedent in the Ninth Circuit as to the specific nature of Plaintiffs' burden to show that the Writ should not be vacated, the prevailing test appears to be a 'probable cause' standard that requires Plaintiffs to demonstrate the evidence shows a fair or reasonable probability that Plaintiffs will prevail on their alter-ego claim."). The Magistrate Judge's adoption of a probable cause standard for the alter ego allegations was not clearly erroneous or contrary to law. Similarly, his conclusion that Pioneer failed to meet its burden to sufficiently support its alter ego allegations was not clearly erroneous. See Kilkenny v. Arco Marine Inc., 800 F.2d 853, 859 (9th Cir. 1986) ("Corporate separateness is respected unless doing so would work injustice upon an innocent third party."); see also Chan v. Society Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997) ("We have held that disregard of corporate separateness 'requires that the controlling corporate entity exercise total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own.' As formulated by the Second Circuit, federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own.") (quoting Kilkenny, 800 F.2d at 859, and citing Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980)).

That the Ninth Circuit initially requires a party seeking an attachment order to establish a prima facie claim does not mean that the Magistrate Judge's use of a probable cause standard for alter ego allegations at the motion to vacate stage was clearly erroneous or contrary to law. See Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad, 591 F.3d 1208, 1211 (9th Cir. 2010) ("Equatorial argues that it isn't required to prove its case just to defeat the motion to vacate. This is certainly true, but in order to justify the continued attachment of MISC's property, Equatorial had the burden of showing that it had a <u>valid</u> prima facie breach of contract or unjust enrichment claim." (emphasis in original)). This Court does not view the Magistrate Judge's order as saying anything more remarkable than that although an initial review of Pioneer's Complaint and supporting evidence may have indicated that Pioneer had alleged prima facie entitlement to the writ of attachment, a subsequent reappraisal of the allegations and evidence in support of the alter ego allegations resulted in the Magistrate Judge concluding that Pioneer's showing was not sufficiently "valid" to support the continuance of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313 PA (VBKx) | Date | December 22, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Co. v. Marine Trade, S.A., et al. | | |

attachment order. This conclusion was not clearly erroneous. Additionally, this Court has independently reviewed the allegations and evidence in support of Pioneer's assertion of RBDA's alter ego liability and concludes that Pioneer has failed meet even a prima facie burden to establish that RBDA should be considered MT's alter ego. See Chan, 123 F.3d at 1294.

Because the Court has concluded that the Magistrate Judge was not clearly erroneous in concluding that the attachment order should be vacated because Pioneer has not adequately established that RBDA should be considered MT's alter ego, the Court need not, and does not, address the Magistrate Judge's discussion of the propriety of Pioneer's invocation of the Court's admiralty jurisdiction and the potential applicability of English law to that inquiry. Those issues are more appropriately addressed by this Court through a regularly-noticed Motion to Dismiss.

The final issue this Court must address is the applicability of Federal Rule of Civil Procedure 62(a)'s fourteen-day automatic stay provision and the Magistrate Judge's order staying the release of the M/T Adele Marina Rizzo for two days. Although there is some support in the case law for Pioneer's argument that Rule 62(a)'s fourteen-day automatic stay provision should apply to an order vacating an attachment order, the rationale for those cases appears to be the preservation of an appellate court's jurisdiction to reach the merits of an order vacating an order of attachment by maintaining uninterrupted in rem jurisdiction over the seized property. However, following the Supreme Court's decision in Republic Nat'l Bank v. United States, 506 U.S. 80, 88-89, 113 S. Ct. 554, 559-60, 121 L. Ed. 2d 474 (1992), transfer of the res from the district does not deprive the Court of Appeals of jurisdiction. To conclude that a vessel that was "improvidently" attached must remain in the district for fourteen days through the automatic application of Rule 62(a) is a manifestly unjust result. Pioneer was not required to post any security to obtain the attachment order, and pursuant to its argument concerning the applicability of Rule 62(a), can force a ship to remain in the harbor for fourteen days, at enormous cost to RBDA and at no expense to itself, despite the Magistrate Judge's conclusion that the attachment order was improvidently granted (and this Court's affirmance of that order). Moreover, by allowing the immediate dissolution of the attachment order without a stay, Pioneer is in no worse position than if the initial Ex Parte Application for Attachment Order had been denied.

In many ways, the issuance of an attachment order is similar to the issuance of an injunction prohibiting the property from leaving the district. Unlike an action to enforce a judgment, the dissolution of an injunction is exempt from Rule 62(a)'s automatic stay. See Fed. R. Civ. P. 62(a)(1). Instead, a party seeking the continued enforcement of an injunction after its dissolution is required to seek a stay from the court "on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). The same rule should apply in situations such as those presented here. See Centauri Shipping, Ltd. v. Western Bulk Carriers KS, 528 F. Supp. 2d 186, 189 (S.D.N.Y. 2007) ("In the instant case, it is clear that plaintiff's motion should be analyzed under subsection (c) because vacatur effectively 'lifted . . . an injunction' which provided for the attachment of defendants' assets . . . ."); cf. Alyeska Pipeline Serv. Co. v. The Vessel Bay Ridge, 703 F.2d 381, 385 (9th Cir. 1983) ("Since the Rule 62(a) automatic [fourteen-day] stay is inconsistent with Rule E(5)(c) [of the Supplemental Rules of Admiralty and Maritime Claims], Rule 62(a) must give way.") (overturned on other grounds by

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10313 PA (VBKx) | Date | December 22, 2011 |
|---|---|---|---|
| Title | Pioneer Freight Futures Co. v. Marine Trade, S.A., et al. | | |

Republic Nat'l Bank, 506 U.S. 80, 113 S. Ct. 554, 121 L. Ed. 2d 474). At a minimum, this Court concludes that the Magistrate Judge was not clearly erroneous in staying his order vacating the attachment order for just two days rather than fourteen.

    For all of the foregoing reasons, the Court denies Pioneer's Ex Parte Application for Review. The December 14, 2011 Attachment Order is vacated. Pioneer has not requested that the Court issue an injunction on any basis other than Rule 62(a)'s automatic stay provision. Because Pioneer has not sought a stay on any other basis, including by posting a bond under Rule 62(c), this Court declines to stay this order pending further appeal. The M/V Adele Marina Rizzo is hereby released.

    IT IS SO ORDERED.